1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON,
AT SEATTLE

MID-CENTURY INSURANCE COMPANY,

Plaintiff,

vs.

GREENFAB, LLC, a Washington corporation;
and MANUEL IBARRA, an individual;

Defendants.

Cause No. 2:18-cv-1152

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Mid-Century Insurance Company ("Mid-Century"), for its complaint against defendants, alleges as follows:

## I.    PARTIES AND JURISDICTION

1.1    Plaintiff Mid-Century is a California stock insurance company with its principal place of business in California.  Mid-Century is licensed to transact business in Washington and does transact business in Washington.

1.2    On information and belief, Defendant Greenfab, LLC is a limited liability company organized under the laws of the state of Washington with its principal place of business in King County, Washington.

COMPLAINT FOR DECLARATORY RELIEF – 1
USDC WD WA/SEA CAUSE NO.  2:18-cv-1152

2300.00541 kg31f503ff

1.3     On information and belief, Defendant Manuel Ibarra, is an individual residing in Washington State.

1.5     This is an action for a declaratory judgment pursuant to USC § 2201, et seq., to determine an actual case or controversy between the parties.

1.6     This court has jurisdiction pursuant to USC § 1332, et seq., because this matter involves citizens of different states and the amount in controversy exceeds $75,000.00.

## II.     FACTUAL ALLEGATIONS

2.1     Mid-Century reasserts the allegations set forth above as though fully set forth herein.

2.2     Mid-Century issued a Businessowners liability insurance policy to Greenfab, LLC, policy number 60484-23-20, for the policy period September 15, 2015 to September 15, 2016, for liability arising out of Greenfab, LLC's real estate operations and use of the building premises located at 6701 Greenwood Ave. N., Seattle, WA 98103 (the "Policy").  A true and accurate copy of the Policy is attached hereto as Exhibit A and is incorporated herein by reference.

2.3     A lawsuit was filed by Manuel Ibarra against Greenfab Homes, LLC ("Greenfab Homes") and Greenfab LLC in Skagit County Superior Court, Cause No. 18-2-00398 29, on or about March 22, 2018 ("Underlying Action").  A true and accurate copy of the complaint in the Underlying Action is attached hereto as Exhibit B and is incorporated herein by reference.

2.4     The Underlying Action alleges, in relevant part, that on or about May 5, 2016, Manuel Ibarra was severely injured when a scaffolding holding lumber collapsed on top of him.  At the time of the incident, Mr. Ibarra alleges that he was a subcontractor assisting Greenfab

COMPLAINT FOR DECLARATORY RELIEF – 2
USDC WD WA/SEA CAUSE NO.  2:18-cv-1152

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

2300.00541 kg31f503ff

Homes in construction of prefabricated houses at a facility located in Burlington, WA (the "Job Site").

2.5     Manuel Ibarra alleges in the Underlying Action that Greenfab Homes, LLC, as the general contractor at the Job Site, had a non-delegable duty to maintain the Job Site in a reasonably safe condition for employees, particularly the subject scaffolding.  Manuel Ibarra also alleges that Greenfab Homes, LLC breached that duty by (1) not inspecting the scaffolding, (2) allowing individuals to use the scaffolding despite knowing it was insufficient for its purpose, and (3) hiring an incompetent third party to construct the scaffolding.

2.6     Manuel Ibarra alleges in the Underlying Action that Greenfab, LLC subcontracted with Manuel Ibarra's employer to build pre-fabricated wood structures at the Job Site in Skagit County, Washington.

2.7     Manuel Ibarra also alleges that Greenfab, LLC was in control of the construction Job Site in Skagit County.

2.8     Mid-Century agreed to defend Greenfab LLC against Manuel Ibarra's claims pursuant to a full reservation of rights under the Policy.

2.9     However, the Policy does not provide coverage to Greenfab, LLC for Manuel Ibarra's claims in the Underlying Action.  The Policy provides, in pertinent part:

> In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy.  We provide insurance only for those Coverages described and for which a specific limit of insurance is shown.
>
> * * *
>
> BUSINESSOWNERS LIABILITY COVERAGE FORM
>
> A.     Coverages
>
>    1.     Business Liability
>
>        a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", . . .

COMPLAINT FOR DECLARATORY RELIEF – 3
USDC WD WA/SEA CAUSE NO.  2:18-cv-1152

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

2300.00541 kg31f503ff

. to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", . . . . to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

\* \* \*

    b.    This insurance applies:

        (1)    To "bodily injury" . . . . only if:

                (a)    The "bodily injury" . . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

                (b)    The "bodily injury" . . . . occurs during the policy period.

\* \* \*

LIMITATION OF COVERAGE REAL ESTATE PROPERTY MANAGEMENT OPERATIONS

This insurance applies only to "bodily injury", . . . . arising out of the ownership, operation, maintenance or use of:

    **A.**    **Real Estate Agents**

        1.    Such part of any premises you use for general office purposes; and

        2.    Premises listed with you for sale or rental, if:

            a.    You do not own or operate the premises;

            b.    They are not in your care, custody, or control; or

            c.    You do not act as agent or in any supervisory capacity for the collection of rents.

    **B.**    **Property Managers**

        1.    Such part of any premises you use for general office purposes; and

        2.    Premises you manage in your capacity as a property manager, however, liability arising out of such activities will be excess over any valid and collectible insurance available to you.

    **C.**    The following is added to Section **B. EXCLUSIONS**

    This policy does not apply to bodily injury," . . . . arising out of any coverage for:

        1.    Construction, Contracting, and/or Development Operations;

        2.    Subcontracting Operations; . . . .

Soha & Lang, P.S.
Attorneys at Law
1325 Fourth Avenue, Ste 2000
Seattle, Washington  98101
(206) 624-1800/Fax (206) 624-3585

2300.00541 kg31f503ff

* * *

B.   Businessowners Liability Coverage Form BP 00 06 or Section II – Liability of Businessowners Coverage Form BP 00 03 is amended as follows:

1.   The following is added to Paragraph A.1.a. Business Liability:

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement of defense costs.

* * *

## III.   CAUSE OF ACTION FOR DECLARATORY RELIEF

4.1   Mid-Century reasserts the allegations set forth above as though fully set forth herein.

4.2   Based on the terms of Mid-Century Policy as compared to the facts of the claim, Mid-Century has no duty to defend and no duty to indemnify defendant Greenfab, LLC under the Policy against the claims made in the Underlying Action by Manuel Ibarra for one or more of the following reasons:

a.   The allegations in the Underlying Action do not allege "bodily injury" covered by the Policy.  The Policy only applies to liability for "bodily injury" arising out of the operation of the Greenwood Avenue address which Greenfab, LLC uses for its general office, or for "bodily injury" arising out of the use of a premises that was listed with Greenfab, LLC for sale or rental or which was "managed" by Greenfab, LLC.  The Underlying Action alleges "bodily injury" arising out of a job site located in Skagit County, not the Greenwood address.  Nor was the

COMPLAINT FOR DECLARATORY RELIEF – 5
USDC WD WA/SEA CAUSE NO.  2:18-cv-1152

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

2300.00541 kg31f503ff

Job Site managed by Greenfab, LLC or listed with Greenfab, LLC for sale or rental.

b.    The allegations in the Underlying Action assert that Manuel Ibarra suffered bodily injury in the course of a construction project on which he was working on behalf of a subcontractor.   The exclusion in form E6285 in the Policy precludes coverage for bodily injury arising out of construction, development operations and/or subcontractor operations.

c.    The Policy provides that if Mid-Century Insurance Company initially defends or pays for defense, but later determines that none of the claims, for which it provided a defense or defense costs, are covered under the Policy, then Mid-Century Insurance Company has the right to reimbursement of defense costs it has incurred.

d.    Because there is no coverage for the claim under the policy, there is no duty to defend or indemnify and Mid-Century is entitled to reimbursement of defense costs.

## IV.   PRAYER FOR RELIEF

WHEREFORE, Mid-Century prays for the following relief:

A.    For a declaratory judgment in its favor stating that:

(i)    the Policy provides no coverage to defendant Greenfab, LLC for the claims made by Manuel Ibarra;

(ii)    Mid-Century has no duty to defend Greenfab, LLC under the Policy against the claims made by Manuel Ibarra;

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/Fax (206) 624-3585

2300.00541 kg31f503ff

(iii)    Mid-Century may withdraw from the defense of Greenfab, LLC in the Underlying Action;

(iv)    Mid-Century has no duty to indemnify Greenfab, LLC in connection with any settlement or judgment in the Underlying Action in favor of Manuel Ibarra; and

(v)    Mid-Century is entitled to reimbursement of the defense costs that it expended on Greenfab LLC's behalf pursuant to the terms of the Policy.

B.    For costs and attorney's fees to the extent permitted by law; and

C.    For such other and further relief as this court may deem just and equitable.

DATED this 7th day of August, 2018.

SOHA & LANG, P.S.

By:   */s/Misty Edmundson*
Misty Edmundson, WSBA # 29606
Email address edmundson@sohalang.com
**Soha & Lang, P.S.**
1325 Fourth Avenue, Suite 2000
Seattle, WA  98101-2570
Telephone:  206-624-1800
Facsimile:  206-624-3585
Attorneys for Plaintiff Mid-Century Insurance Company

COMPLAINT FOR DECLARATORY RELIEF – 7
USDC WD WA/SEA CAUSE NO.  2:18-cv-1152

SOHA & LANG, P.S.
ATTORNEYS AT LAW
1325 FOURTH AVENUE, STE 2000
SEATTLE, WASHINGTON  98101
(206) 624-1800/FAX (206) 624-3585

2300.00541 kg31f503ff

# EXHIBIT A

**SSA**

**PREMIUM IS < $5000**

**INSURED**

**This section is for policy:** **60484-23-20**
**Assembled-on Date:** **04/18/18**
**Assembled-on Time:** **01:40:34**
**Full Policy Number:** **A6048423200015**
**Transaction Number:** **001**
**Operator id:** **RH289**

**TRANSACTION:**
**AUTOMATIC-RENEWAL**
**** REPRINT REQUEST ****

CM057R03   03



PO BOX 2527
Grand Rapids,  MI.  49501-2527

PRODUCER#:   03  79  09  229
RENEE  CORWIN  REY
805  OCEAN  BEACH  HWY
LONGVIEW            WA  98632

PRODUCER#:   03 79 09 229
RENEE CORWIN REY
805 OCEAN BEACH HWY
LONGVIEW   WA  98632



FARMERS
INSURANCE

PO BOX 2527
Grand Rapids, MI. 49501-2527



**FARMERS**
INSURANCE

RENEE CORWIN REY
805 OCEAN BEACH HWY
LONGVIEW WA 98632
PRODUCER#: 03 79 09 229

GREENFAB LLC
GREENFAB
6701 GREENWOOD AVE N

SEATTLE WA 98103-5234



RENEE CORWIN REY
805 OCEAN BEACH HWY
LONGVIEW WA 98632

FARMERS INSURANCE

GREENFAB LLC
GREENFAB
6701 GREENWOOD AVE N
SEATTLE WA 98103-5234

# ** Policyholder Reminder **
# **Review Your Coverages To Ensure They Meet Your Needs**

Dear Farmers ®Customer,

Thank you for choosing Farmers for your Business Insurance needs.

In today's dynamic business environment, we understand that your business can change throughout the year. For example, you may acquire new equipment, adjust your staffing, add a new location, create electronic ordering and/or billing for your customers, or begin offering new services.

**These and many other changes may require updated insurance coverage for your business.**

Farmers offers several services at no cost to you in order to help protect your business and your livelihood.

For example:

- Your Farmers Agent is a great resource who can provide you with business insurance consulting services.
- Whether you are a new or returning client, you can take advantage of this service by calling your Farmers Agent to schedule a Farmers Friendly Review. Your agent will discuss your business needs, review your coverage, and make any coverage adjustments needed.
- MySafetyPoint.com offers a wealth of safety and loss control information which may help you avoid workplace injuries and other losses.
- To access this information, log onto www.mysafetypoint.com, and then register with your policy number and email address. There you will find safety and loss control information that is specific to your type of business.

Thank you for your business. If you have any questions, please contact your Farmers agent.



# Notice To Policyholders
# Regarding Terrorism Insurance Coverage

Thank you for choosing Farmers® for your insurance needs. We appreciate your business and want to keep you informed about changes to your policy and the coverage it provides. This notice is to advise you of recent changes in the U.S. government's Terrorism Risk Insurance Program and the applicability of the endorsements to your policy that address potential terrorism losses. As explained below, these changes to the federal Program will not affect the scope of its coverage for certified acts of terrorism under your policy, nor will they affect the current premium you are paying for this coverage.

The Terrorism Risk Insurance Act of 2002 established the Terrorism Risk Insurance Program, ("the Program") within the Department of the Treasury, under which the federal government would potentially share, with the insurance industry, the risk of loss from a "certified act of terrorism" under the Program. The Program scheduled to terminate on December 31, 2014, was reauthorized by Congress with changes, including extending the termination date from December 31, 2014 to December 31, 2020. President Obama signed the Terrorism Risk Insurance Program Reauthorization Act of 2015 into law on January 12, 2015. Accordingly, as described below, coverage provided by your policy for loss caused by a "certified act of terrorism" continues to be eligible under the Program for partial reimbursement by the United States government under a formula established by federal law.

Your policy is currently endorsed with two types of terrorism endorsements: one which recognizes the fact that the federal Program potentially could have terminated or undergone substantial changes, and, one which addresses the provisions of the ongoing Program.

The first endorsement, titled *Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act)*, has policy provisions contingent on whether or not the Program terminates. However, as described above, the Program has been reauthorized and extended with a new termination date. Therefore, although this Conditional Exclusion continues to be endorsed to your policy, it would not have effect until the potential December 31, 2020 termination of the Program or until other changes in the Program occur due to future action by Congress, as provided for in the endorsement.

Your policy also contains an endorsement titled *Limited Terrorism Exclusion (Other Than Certified Acts Of Terrorism); Cap on Losses From Certified Acts Of Terrorism*. At this time, because the Program is in effect and your policy is so endorsed, the provisions of this endorsement apply to your policy and according to its terms you have limited coverage for certified acts of terrorism. However, the terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy, such as losses excluded by the Nuclear Hazard or War exclusion provisions in your policy.

The Terrorism Risk Insurance Program Reauthorization Act of 2015 also made various changes to Program procedures and terminology, none of which affect the scope of coverage for certified acts of terrorism under your policy. With this renewal we are updating your policy with revised endorsements relating to these changes. There is no additional premium for this coverage due to the reauthorization of the Program. In the future, your premium for Program certified acts of terrorism coverage may be revised due to various factors, including but not limited to, changes in the Program that affect federal reimbursement to us in the event of losses from a certified act(s) of terrorism. The total amount charged for Terrorism Risk Insurance Act coverage is shown on the *Disclosure Pursuant To Terrorism Risk Insurance Act* endorsement that is currently attached to this renewal policy and does not include any charges for the portion of loss covered by the federal government under the Act.

This Notice does **not** form a part of your insurance contract. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

Please read your policy carefully, including the endorsements attached to your policy.



# Important Information About Your Renewal Policy

As you review the enclosed renewal policy, you will notice a number of changes on the Declarations pages. The Declarations page now includes a list of all applicable coverages, including limits and deductibles or waiting periods, if any, applicable to a particular coverage. It also shows whether coverage is provided on a per building basis, a per location basis or applies to all areas covered by the entire policy.

When a deductible or waiting period applies to a particular coverage it will be displayed explicitly on the Declarations. If a deductible or waiting period does not apply to a particular coverage, that box will be left blank or state "none".

You will also notice that we have included a new policy endorsement *(J6849, 2nd Edition - Deductible Provisions)* which explains how the deductible will be applied if a single loss affects multiple coverages with different deductible amounts. If a loss occurs, we will apply no more than the amount of the highest deductible associated with all coverages at each location affected.

This notice provides a summary of the changes to your policy; it is not a part of your insurance contract. Please review your policy, endorsements and Declarations pages for complete information.

If you have any questions, please contact your Farmers® agent.



Business Insurance Billing
PO Box 2847
Grand Rapids, MI 49501-2847
Contact us: (855) 323-5350

Dear Valued Customer,

As part of our continuing efforts to improve your experience with Farmers®, we are making some exciting enhancements to your Business Insurance billing account, including introducing a new billing statement with easier-to-understand language, new pay plans and more.

## New Features for your Business Insurance Billing Account

- Enhanced Electronic Billing Options: By enrolling in online billing you can view your bills electronically, as well as make one time electronic payments. You can even schedule automated payments to ensure your billing coverage continues without interruption. And if you sign up to pay your bill automatically using a checking or savings account we will waive your installment fee. Just visit **www.myclbiz.com** to sign up.

- New Pay Plans: In addition to our monthly and annual pay plans, you can pay your annual premiums in 2, 4 or 6 installments.

- Billing Account Payor: You now have the ability to select who you want your billing invoice to be sent to. For example, if you would like your bill to be directed to your accountant you now have that option. If you would like to change the payor on your billing account please contact the Business Insurance Billing team directly at 855-323-5350.

- Combining Business Insurance policies on one billing account: Customers with Business Insurance policies billing on separate Business Insurance Billing accounts may now be able to combine those accounts on one bill. For example, you can now combine your property and casualty policy and your workers' compensation policy on the same account. If you would like to combine your policies to bill on one account please contact the Business Insurance Billing team directly at 855-323-5350. Please keep in mind both policies have to be billing on an 18-character account number to be eligible for combining on one account.

- New Payment Methods: We now accept payments via Visa®, MasterCard®, Discover®, and American Express® without any convenience fee. In addition, you can pay by Electronic Funds Transfer (EFT) using your checking or savings account number. More information can be found at **www.myclbiz.com**.

- 24x7 Automated Phone Support for Business Insurance Billing: You can obtain current information regarding your bill, and even make payments over the phone by calling the automated 24 hour billing automated service line at 855-323-5350.

- Please reference the Business Insurance Payment Instruction Sheet and Bill Explainer sheet that will be included with your first invoice from the new billing system.

We think you will be pleased with the improved billing experience these new features afford. Should you have any questions, or like to make any changes to your pay plan or account payor, please contact the Business Insurance Billing team directly at 855-323-5350.

Sincerely,

Bryan Murphy
President, Farmers Business Insurance



Business Insurance Billing
PO Box 2847
Grand Rapids, MI 49501-2847
Contact us: (855) 323-5350

# Business Insurance Payment Instruction Sheet

To make sure you experience a smooth transition to the new "Business Insurance Billing" payment plan we have provided the following instructions to help you determine any action that you should take to ensure your premium payment is correctly applied to your new account and that you have the payment plan and billing account payor information that you want for your account.

**As you go through this instruction sheet refer to the accompanying sample invoice. It highlights important things you need to know about your new payment plan.**

**Things to be aware of regarding your new account**

- A new, 18-character account number, which begins with 'F', has been assigned for your business insurance policy.
- The **due date** for your bill may have changed.
- We have continued the equivalent payment plan term for you based on your current policy.
  - You may keep your current payment plan option or
  - You may change to a new installment option of 1, 2, 4, 6 or 12 installments
- To change your pay plan or payor name and address call:
  - Business Insurance Billing Services at (855) 323-5350

**Making your first Premium Payment**

- Pay online at: www.myclbiz.com
- Pay online through your own banking institution. (IMPORTANT: You must change your account instructions to the new payment address to avoid your payment going to the wrong company and address.)
- Mail your payment, with payment coupon, to the mailing address shown at the bottom of your invoice. Please do not combine payments with other Farmers ® accounts.

**Getting started with Online Bill payment at www.myclbiz.com**

- Create a user I.D. and password. (The User I.D. and password you create can be the same as you previously used on the old site, but will not automatically carry over.)
- Enroll in or continue automatic recurring Electronic Funds Transfers (EFT)
  - Re-enrolling will continue paperless billing.
  - To enroll in or continue automatic recurring EFT you will need to re-enroll at **www.myclbiz.com**.
  - **Customers enrolled in electronic billing and signed up for automated EFT pay $0 installment fees.**

- You can make one-time payments using your credit card or bank account information on **www.myclbiz.com** without having to register.

If you have questions or concerns that are not answered in these materials, please contact Business Insurance Billing Services directly at (855) 323-5350 for additional assistance.

# Invoice

Farmers Insurance Group of Companies
P.O. Box 2847
Grand Rapids, MI 49501-2847

Farmers Insurance Exchange
Farmers Texas County Mutual Insurance Company
Mid-Century Insurance Company
Truck Insurance Exchange
Foremost Insurance Company
Foremost Insurance Company Grand Rapids Michigan
Foremost Property and Casualty Insurance Company
Foremost Signature Insurance Company

# FARMERS
INSURANCE

| | |
|---|---|
| **Agency:** | AGENCY NAME |
| **Account Name:** | Account Name |
| **Account Number:** | F012345678-001-00001 [1] |
| **Invoice Date:** | 07-05-13 [2] |
| **Due Date:** | 07-25-13 |
| **Current Balance:** | $7,641.96 |
| **Minimum Balance:** | $1,278.66 |

[3]

**PAYOR NAME AND ADDRESS**

PAYOR NAME
100 TEST STREET
TEST TOWN, ST 55555

Please see reverse side for other messages
and important billing information.

IF WE DO NOT RECEIVE THE MINIMUM DUE BY THE DUE DATE ON THIS INVOICE.

* YOU WILL BE ASSESSED A LATE FEE OF $20.00
* THE DUE DATE OF YOUR NEXT INSTALLMENT WILL BE ACCELERATED TO 08/05/13
* THE MINIMUM AMOUNT DUE BY 08/05/13 TO AVOID ISSUANCE OF A CANCELLATION NOTICE WILL BE $2,571.32

[4]

## SUMMARY OF ACTIVITY SINCE YOUR LAST INVOICE

| POLICY NUMBER | EFFECTIVE DATE | ACTIVITY | TRANSACTION AMOUNT | MINIMUM DUE |
|---|---|---|---|---|
| | 06-09-13 | PREVIOUS STATEMENT BALANCE | 10,187.28 | |
| | | PAYMENT - THANK YOU | 2,571.32C | |
| | | INSTALLMENT FEE | 6.00 | 6.00 |
| P&C 123456789 | 01-25-13 | | | 900.75 |
| WC A12345678 | 01-25-13 | | | 371.91 |

[5]

## FUTURE INSTALLMENTS

Please note that changes to your policy coverage may change your installment schedule.

| Due Date | Premium | Fee | Amount Due | Due Date | Premium | Fee | Amount Due |
|---|---|---|---|---|---|---|---|
| 08-25-13 | 1,272.66 | 6.00 | 1,272.66 | | | | |
| 09-25-13 | 1,272.66 | 6.00 | 1,272.66 | | | | |
| 10-25-13 | 1,272.66 | 6.00 | 1,272.66 | | | | |
| 11-25-13 | 1,272.66 | 6.00 | 1,272.66 | | | | |
| 12-25-13 | 1,272.66 | 6.00 | 1,272.66 | | | | |

[6]

## PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

| ACCOUNT NUMBER | INVOICE DATE | DUE DATE | CURRENT BALANCE | MINIMUM DUE |
|---|---|---|---|---|
| F012345678-001-00001 | 07-25-13 | 07-25-13 | $7,641.96 | $1,278.66 |
| | | | | AMOUNT ENCLOSED |

If you have an address change, you must place a check mark in the box below and enter the new information in the space provided on the reverse side.

☐ **Key on back**

Make Checks payable to:
**Farmers Insurance Group of Companies**

Mail payment to:

[7]

FARMERS INSURANCE GROUP OF COMPANIES
P.O. BOX 4665
CAROL STREAM, IL 60197-4665

**Paper Bill Explainer Key**

These items highlight the main areas on your new invoice and the important changes you need to be aware of.

1. **Account Number**: This number is 18 characters long and begins with an "F". It identifies your account and all the policies attached to it.

2. **Due Date**: The date payment must be received to avoid a notice of cancellation.

3. **Payor Name and Address**: Identifies the name and address for the billing account payor.

4. **Summary of Activity**: Gives you the transaction details for your billing account since your last invoice.

5. **Future Installments**: Provides the details of the installment schedule for your chosen pay plan.

6. **Payment Coupon**: It is important to include the payment coupon at the bottom of your invoice with all payments by mail to ensure proper and timely application of your payment.

7. **Mail Payment to**: This is a new address and as such is different from the address you may have recorded for past payments on the prior billing system.

8. **New Payment Options**: Your new billing experience gives you more options allowing you to pay by phone or online. Once your billing account is established, we encourage you to sign up for paperless billing and recurring, electronic funds transfer (EFT) automatic bill payment at **myclbiz.com**. Doing so will free up your time and save you some money as installment fees are waived when you sign up for recurring, EFT automatic payments.

| 5 | | Message |
|---|---|---|

**PAY ON-LINE. IT'S EASY AND EFFICIENT. SET UP YOUR RECURRING, AUTOMATIC PAYMENT TODAY. LOG ON TO OUR WEB SITE MYCLBIZ.COM.**

**NEW PAYMENT OPTIONS ARE NOW AVAILABLE. CALL 866-315-8445 TO MAKE A PAYMENT BY PHONE USING A VISA, MASTER CARD OR DISCOVER CREDIT CARD, OR AN ELECTRONIC CHECK.**

**YOUR BUSINESS IS YOUR LIVELIHOOD AND WE ARE GLAD YOU TRUST US WITH YOUR INSURANCE.**



Please contact your agent to update any address on your policy.

ACCOUNT #: **F012345678-001-0001**
**ACCOUNT  NAME**

Please print the new billing address below:

ADDRESS _____

STATE _____  ZIP CODE _____

Do Not Write Below This Line



**FARMERS**
**INSURANCE**

**Mid-Century Insurance Company (A Stock Company)**
Member Of The Farmers Insurance Group Of Companies®

Home Office: 6301 Owensmouth Ave., Woodland Hills, CA 91367

# COMMON POLICY DECLARATIONS

| | |
|---|---|
| **Named Insured** | GREENFAB LLC<br>GREENFAB |
| **Mailing Address** | 6701 GREENWOOD AVE N<br>SEATTLE, WA 98103-5234 |

F005323727-001-00001

| Account No. | Prod. Count |
|---|---|
| 79-09-229 | 60484-23-20 |
| Agent No. | Policy Number |

**Form of Business**
☐ Individual  ☐ Joint Venture  ☒ Limited Liability Co.
☐ Corporation  ☐ Partnership  ☐ Other Organization

**Business Description:**
Real Estate Office

**Policy Period**
From _____ 09-15-2015 _____ (not prior to time applied for)
To _____ 09-15-2016 _____ 12:01 A.M. Standard time at your mailing address shown above.

If this policy replaces other coverage that ends at noon standard time of the same day this policy begins, this policy will not take effect until the other coverage ends. **This policy will continue for successive policy periods as follows:** If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period subject to our premiums, rules and forms then in effect.

This policy consists of the following coverage parts listed below and for which a premium is indicated. This premium may be subject to change.

| Coverage Parts | Premium After Discount And Modification |
|---|---|
| Businessowners | $363.00 |
| Cyber Liability And Data Breach Expense Coverage | $80.00 |
| Certified Acts Of Terrorism - See Disclosure Endorsement | Included |
| | |
| | |
| | |
| | |
| | |
| | |
| Total (See Additional Fee Information Below) | $443.00 |

**Policy Number:**   60484-23-20                                      **Effective Date:**   09-15-2015

| **Forms Applicable To** | 25-3065 | Reminder-Review Your Coverages |
|---|---|---|
| **All Coverage Parts:** | E0002-ED1 | Blank Manuscript Endorsement-Long |
| | IL00030498 | Calculation Of Premium |

**Your Agent**   Renee Corwin Rey
Renee Corwin Rey Ins Agency Inc
805 Ocean Beach Hwy
Longview, WA 98632
(360) 414-8754

_____          _____
Countersigned (Date)                                    By Authorized Representative

**Policy Number:**  60484-23-20                          **Effective Date:**  09-15-2015

**Additional Fee Information**

The following additional fees apply on an account, not a per-policy, basis.

- A **service fee** will be assessed on every installment invoice and will be included in the minimum amount due. However, if you choose to pay the entire account balance in full upon receipt of the first installment, the fee will be waived. In addition, for accounts fully enrolled in online billing and scheduled for recurring Electronic Funds Transfer (EFT) payments the fee will be waived.

| State | Installment Fee |
|---|---|
| All states except Alaska, Florida, New Jersey And West Virginia | $6.00 |
| Alaska | Not applicable |
| Florida | $3.00 |
| New Jersey | $7.00 |
| West Virginia | $5.00 |

- A **returned payment fee** applies per check, electronic transaction or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account. ***NOTE: If the returned payment is in response to a Notice of Cancellation, coverage still cancels on the cancellation effective date set forth in the notice.***

| State | NSF Fee |
|---|---|
| All States Except Alaska, Florida, Indiana, Maine, Nebraska, New Jersey, North Dakota, Oklahoma, Virginia And West Virginia | $30.00 |
| North Dakota And Oklahoma | $25.00 |
| Nebraska And Indiana | $20.00 |
| Florida And West Virginia | $15.00 |
| Maine | $10.00 |
| Alaska, New Jersey And Virginia | Not applicable |

- A **late fee** will be assessed on each Notice of Cancellation that is issued and will be included in the minimum amount due.

| State | Late Fee |
|---|---|
| All States Except Alaska, Florida, Maryland, Missouri, Nebraska, New Jersey, Rhode Island, Virginia, South Carolina And West Virginia | $20.00 |
| Maryland, Nebraska, Rhode Island And South Carolina | $10.00 |
| Alaska, Florida, Missouri, New Jersey, Virginia And West Virginia | Not applicable |

The following applies on a per-policy basis.

- A **reinstatement fee** of $25.00 will be assessed if the policy is reinstated over 30 days but under 6 months from the cancellation date. *This fee does not apply to Florida, Indiana & Maryland or to Workers Compensation policies.*

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.



Dear Valued Customer:

**THIS POLICY DOES NOT PROVIDE WORKERS' COMPENSATION COVERAGE FOR JOB RELATED INJURIES TO YOUR EMPLOYEES.**

State law may require such coverage.  Be sure you are in compliance with the state law.

## FARMERS INSURANCE GROUP OF COMPANIES



**FARMERS**
**INSURANCE**

**E0002**
**1st Edition**

# ENDORSEMENT

Effective
Date      09/15/15

60484-23-20
**Policy Number**
of the Company designated
in the Declarations

NAMED INSURED(S)
GRAU SWEN
HARTSFIELD JOHNNY
GREENFAB

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

Countersigned _____
Authorized Representative

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**



**FARMERS**
**INSURANCE**

**J6300**
**3rd Edition**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

| SCHEDULE - PART I |
| --- |
| **Terrorism Premium (Certified Acts) $**            13.00 |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE - PART II |
| --- |
| **Federal share of terrorism losses** __85__ **% Year: 20**__15__ <br> (Refer to Paragraph **B.** in this endorsement) |
| **Federal share of terrorism losses** __84__ **% Year: 20**__16__ <br> (Refer to Paragraph **B.** in this endorsement) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
| --- |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

E**2010**
**3rd Edition**

## CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

### SCHEDULE

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2.**) applies to property located in the following state(s): |

|  |  |
|---|---|
| California | Oregon |
| Illinois | Virginia |
| Iowa | Washington |
| Missouri | Wisconsin |
| North Carolina | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Coverage is amended as follows:

   **1. Applicability Of The Provisions Of This Endorsement**

     **a.** The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

       **(1)** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form; or

       **(2)** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

          **(a)** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

          **(b)** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

          **(c)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

     **b.** If the provisions of this endorsement become applicable, such provisions:

       **(1)** Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or injury or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

  **(2)** Remain applicable unless we notify you of changes in these provisions, in response to federal law.

 **c.** If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**2.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

 **a.** That involve the following or preparation for the following:

  **(1)** Use or threat of force or violence; or

  **(2)** Commission or threat of a dangerous act; or

  **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

 **b.** When one or both of the following applies:

  **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

  **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**B.** The **Businessowners Special Property Coverage Form** is amended as follows:

**1.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

 **a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

 **b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

 **c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

 **d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

 **e.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **1.e.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**2. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverages or endorsements that apply to those coverages.

**3. Application Of Other Exclusions**

When the Exclusion Of Terrorism applies in accordance with the terms of Paragraph **1.a.** or **1.b.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form.

**C.** The **Businessowners Liability Coverage Form** is amended as follows:

**1.** The following definition is added and applies under this endorsement wherever the phrase any injury or damage, is enclosed in quotation marks:

"Any injury or damage" means any injury or damage covered under this Coverage Form or any applicable endorsement, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury", as may be defined under this Coverage Form or any applicable endorsement.

**2.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**a.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**b.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**c.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**d.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**e.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**f.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(1)** Physical injury that involves a substantial risk of death; or

**(2)** Protracted and obvious physical disfigurement; or

**(3)** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **2.e.** or **2.f.** are exceeded.

With respect to this Exclusion, Paragraphs **2.e.** and **2.f.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form.

**D.** The following provision is added to the applicable Coverage Form:

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.



**FARMERS**
**INSURANCE**

**Mid-Century Insurance Company (A Stock Company)**
Member Of The Farmers Insurance Group Of Companies ®

Home Office: 6301 Owensmouth Ave., Woodland Hills, CA 91367

# POLICY DECLARATIONS - SERVICE OR OFFICE
# PRIMARY POLICY

**Named Insured**    GREENFAB LLC
GREENFAB

**Mailing Address**    6701 GREENWOOD AVE N
SEATTLE, WA 98103-5234

**Policy Number**  60484-23-20                              ☐ **Auditable**

**Policy Period**    From ___09-15-2015___
To ___09-15-2016___    12:01 A.M. Standard time at your mailing address shown above.

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy. We provide insurance only for those Coverages described and for which a specific limit of insurance is shown.

**Your Agent**    Renee Corwin Rey
Renee Corwin Rey Ins Agency Inc
805 Ocean Beach Hwy
Longview, WA 98632
(360) 414-8754

56-2407  1-15
562407-ED1

**Policy Number:** 60484-23-20                                    **Effective Date:**   09-15-2015

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS | BUILDING |
|---|---|

The following coverages apply to the described building. Please refer to the Base Coverages And Extensions section for other coverages and extensions applying at the policy level and to the individual location (premises) section for coverages and limits specific to the location (premises).

**Option:**        BV - Blanket Value (see Base Coverage & Extensions for the total limit)
**Valuation:**     ACV - Actual Cash Value;  AV - Agreed Value; RC - Replacement Cost;
                   ERC - Extended RC;  FRC- Functional RC; GRC - Guaranteed RC
**Abbreviation:**  ALS = Actual Loss Sustained;  BI = Business Income; EE = Extra Expense

| Premises Number | Bldg. No. | Covered Premises Address | Mortgagee Name And Address |
|---|---|---|---|
| 001 | 001 | 6701 Greenwood Ave N<br>Seattle, WA 98103 | |

| Coverage | Option | Valuation | Limit Of Insurance | Deductible/ Waiting Period |
|---|---|---|---|---|
| Business Personal Property (BPP) | | RC | $6,500 | $1,000 |

56-2407  1-15
562407-E1A

**Policy Number:** 60484-23-20        **Effective Date:** 09-15-2015

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS CONTINUED | PREMISES |
|---|---|

The following coverages apply to the described location (premises). Please refer to the Base Coverages And Extensions section for other coverages and extensions applying at the policy level and to the individual building section for coverages and limits specific to the building.

| Premises Number | Bldg. No. | Covered Premises Address |
|---|---|---|
| 001 | All | 6701 Greenwood Ave N, Seattle, WA 98103 |

| Coverage | Limit Of Insurance | Deductible / Waiting Period |
|---|---|---|
| Accounts Receivables - On-Premises | $5,000 | $1,000 |
| Debris Removal | 25% Of Loss + 10,000 | |
| Personal Effects | $2,500 | $1,000 |
| Pollutant Clean Up And Removal Aggregate | $10,000 | $1,000 |
| Valuable Paper And Records - On-Premises | $5,000 | $1,000 |

**Policy Number:** 60484-23-20                                          **Effective Date:**   09-15-2015

| PROPERTY, INLAND MARINE AND CRIME COVERAGES AND LIMITS OF INSURANCE | | |
|---|---|---|
| The following Coverages and Extensions apply to all covered locations (premises) and/or buildings. Please refer to the individual location (premises) and/or building section for coverages and limits specific to such location (premises) and/or building. | | |
| **Base Coverages And Extensions** | **Limit Of Insurance** | **Deductible/ Waiting Period** |
| Accounts Receivables - Off-Premises | $2,500 | $1,000 |
| Arson Conviction Reward | $5,000 | None |
| Business Income & Extra Expense - Civil Authority | 3 Weeks | 72 Hours - BI |
| Business Income (BI) & Extra Expense (EE) | 18 Months - ALS | 72 Hours |
| BPP Seasonal Increase | 25% | |
| Electronic Data Processing Equipment | $10,000 | $1,000 |
| Electronic Data Processing Media And Records | $2,500 | $1,000 |
| Employee Dishonesty | $5,000 | $500 |
| Extended Business Income | 30 Days | |
| Fire Department Service Charge | $1,000 | None |
| Fire Extinguisher Systems Recharge Expense | $2,500 | None |
| Forgery And Alteration | $2,500 | $1,000 |
| Limited Cov. - Fungi Wet Rot Dry Rot & Bacteria - Aggregate | $15,000 | $1,000 |
| Money And Securities - Inside Premises | $5,000 | $500 |
| Money And Securities - Outside Premises | $5,000 | $500 |
| Money Orders And Counterfeit Paper Currency | $1,000 | $1,000 |
| Newly Acquired Or Constructed Building | $250,000 | $1,000 |
| Outdoor Property | $2,500 | $1,000 |
| Outdoor Property - Trees, Shrubs & Plants (Per Item) | $500 | $1,000 |
| Outdoor Signs | $2,500 | $1,000 |
| Personal Property At Newly Acquired Premises | $100,000 | $1,000 |
| Personal Property Off Premises | $5,000 | $1,000 |
| Premises Boundary | 100 Feet | |
| Preservation Of Property | 30 days | |
| Valuable Paper And Records - Off-Premises | $2,500 | $1,000 |

**Policy Number:** 60484-23-20                                                              **Effective Date:** 09-15-2015

| LIABILITY AND MEDICAL EXPENSES<br>COVERAGE AND LIMITS OF INSURANCE |
|---|
| Each paid claim for the following coverage reduces the amount of insurance we provide during the applicable policy period. Please refer to the policy. |

**Premium Basis:**    (A) Area;  (C) Total Cost;  (P) Payroll;  (S) Sales/Receipts;  (U) Each Unit
(M) Public Area Square Feet
(O) Other:

**Covered Premises And Operations**

| Address | Classification /Exposure | Class Code | Prem. Basis | Annual Exposure | Rate | Advance Premium |
|---|---|---|---|---|---|---|
| 6701 Greenwood Ave N<br>Seattle, WA 98103 | Real Estate Agents And Managers | 6531 | Incl | Included | Included | Included |

56-2407  1-15
562407-E1D

**Policy Number:**   60484-23-20                                      **Effective Date:**   09-15-2015

---

**LIABILITY AND MEDICAL EXPENSES COVERAGE AND LIMITS OF INSURANCE CONTINUED**

| Coverage | Amount /Date |
|---|---|
| General Aggregate (Other Than Products & Completed Operations) | $2,000,000 |
| Products And Completed Operations Aggregate | $1,000,000 |
| Personal And Advertising Injury | Included |
| Each Occurrence | $1,000,000 |
| Tenants Liability (Each Occurrence) | $75,000 |
| Medical Expense (Each Person) | $5,000 |
| | |
| Per Location General Aggregate Limit | Included |

**Policy Number:**   60484-23-20                                    **Effective Date:**   09-15-2015

**Policy Forms And Endorsements Attached At Inception**

| Number | Title |
|---|---|
| 25-2110 | Work Comp Exclusion |
| 56-5166ED5 | Additional Policy Conditions |
| 56-5931 | Cyber Liability Dec |
| BP00021299 | Special Property Covg Form |
| BP00060197 | Businessowners Liab Covg Form |
| BP00090197 | Businessowners Common Policy Conditions |
| BP04340197 | Businessowners Computer Covg |
| BP04390196 | Abuse Or Molestation Excl |
| BP04550197 | Business Liab Covg-Tenants Liab |
| BP04600197 | Wa-Employment-Related Practices Excl |
| BP04731298 | Washington Chgs-Domestic Abuse |
| BP05140103 | War Liability Exclusion |
| E2010-ED3 | Conditional Exclusion Of Terrorism |
| E2042-ED2 | Multiple Damages Excl |
| E3027-ED1 | No Covg-Certain Computer Related Losses |
| E3342-ED1 | Personal & Advertising Injury Covg Amend |
| E3451-ED1 | Retail Service Primary Pckg |
| E6036-ED1 | Lead Poisoning & Contamination Excl |
| E6285-ED1 | Real Estate Property Manager |
| E6289-ED1 | Business Income & Extra Expense-18 Mos |
| J6300-ED3 | Discl Of Prem-Cert Acts Of Terror |
| J6316-ED1 | Excl Of Loss Due To Virus Or Bact |
| J6345-ED1 | Excl-Violation Of Statutes |
| J6351-ED2 | Limited Terrorism Exclusion |
| J6353-ED1 | Change To Limits Of Insurance |
| J6610-ED1 | Cyber Liability & Data Breach |
| J6740-ED1 | Two Or More Coverage Forms |
| J6828-ED1 | Ltd Covg For Fungi, Wet/Dry Rot |
| J6849-ED2 | Deductible Provisions |
| S7918-ED1 | Wa-Amend To Membership/Policy Fee |
| W2272-ED2 | Washington Amendatory Endorsement |
| W2274-ED1 | Asbestos Exclusion |
| W7912-ED4 | Washington Changes |
| W7935-ED2 | Mold & Microorganism |
| W7939-ED2 | Washington-Amendment Of Terrorism Excl |

**FARMERS**
**INSURANCE**

## DECLARATIONS
## CYBER LIABILITY AND DATA BREACH EXPENSE COVERAGE

THIS IS CLAIMS MADE AND REPORTED COVERAGE. SUBJECT TO ITS TERMS, THE COVERAGE FORM APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE COMPANY AS SOON AS PRACTICABLE. WITHOUT NEGATING THE FOREGOING REQUIREMENTS, SUCH NOTICE OF CLAIM MUST ALSO BE REPORTED NO LATER THAN 30 DAYS AFTER THE END OF THE POLICY PERIOD OR, IF APPLICABLE, DURING THE OPTIONAL EXTENDED REPORTING PERIOD. AMOUNTS INCURRED AS CLAIMS EXPENSES, WHICH INCLUDES DEFENSE COSTS, SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE COMPANY SHALL NOT BE LIABLE FOR ANY CLAIMS EXPENSES OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. PLEASE READ THE COVERAGE FORM CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT.

**Policy Number:** 60484-23-20

**Item 1.** **Named Insured:** GREENFAB LLC

 **Address:** 6701 GREENWOOD AVE N
 SEATTLE           WA 981035234

**Item 2.** **Policy Period:**

 **From:** 09/15/15

 **To:** 09/15/16

 Both dates at 12:01 a.m. Local Time at the Address stated in **Item 1**.

**Item 3.** **Retroactive Date:** 09/15/13

**Item 4.** **Limit of Liability:**               $50,000

 **Coverage Form Aggregate Limit of Liability** for Insuring Agreements I.A. (Information Security & Privacy Liability), I.B. (Privacy Breach Response Services), and I.C. (Regulatory Defense & Penalties):     $           50,000

**Item 5.** **Retentions:**

 **A.** Insuring Agreements I.A. (Information Security & Privacy Liability) and I.C. (Regulatory Defense & Penalties) - each **Claim** (includes **Claims Expenses**):     $     2500

 **B.** Insuring Agreement I.B. (Privacy Breach Response Services)

 Each Incident, event or related incidents or events giving rise to coverage of **Privacy Breach Response Services**:     $     2500

**Item 6.** **Notification under this coverage form:**

 Help Point® Claim Services
 800-435-7764

**Item 7.** **Forms and endorsements at Inception:**
 Refer to Policy Declaration, Policy forms and Endorsements section
 for applicable Cyber Liability and Data Breach Expense Coverage Forms

 **FARMERS** INSURANCE

**J6610**

**1st Edition**

## CYBER LIABILITY AND DATA BREACH EXPENSE COVERAGE FORM

THIS IS A CLAIMS MADE AND REPORTED COVERAGE FORM. SUBJECT TO ITS TERMS, THIS COVERAGE FORM APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE OPTIONAL EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED AS CLAIMS EXPENSES, WHICH INCLUDES DEFENSE COSTS, SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE COMPANY SHALL NOT BE LIABLE FOR ANY CLAIMS EXPENSES OR FOR ANY JUDGMENT OR SETTLEMENT AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. READ THIS COVERAGE FORM CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE.

Except as specifically set forth herein, the provisions of the policy to which this coverage form is attached shall not apply to this coverage form. Any words or phrases that appear in bold text (other than in headings and titles) shall have special meaning applicable to this coverage form only. Refer to Section **VI. DEFINITIONS**.

The Company agrees with the **Named Insured**:

## I. INSURING AGREEMENTS

### A. Information Security and Privacy Liability

To pay on behalf of the **Insured** for:

**Damages** and **Claims Expenses**, in excess of the retention, which the **Insured** shall become legally obligated to pay because of any **Claim**, including a **Claim** for violation of a **Privacy Law**, first made against any **Insured** during the **Policy Period** or Optional Extended Reporting Period, if applicable and reported in writing to the Company during the **Policy Period** or as otherwise provided in Clauses **IX. WHEN COVERAGE IS PROVIDED** and **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** of this Coverage Form for:

1. Theft, loss, or **Unauthorized Disclosure** of **Personally Identifiable Non-Public Information** or **Third Party Corporate Information** that is in the care, custody or control of the **Insured Organization**, or a third party for whose theft, loss or **Unauthorized Disclosure** of **Personally Identifiable Non-Public Information** or **Third Party Corporate Information** the **Insured Organization** is legally liable (a third party shall include a Business Associate as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), provided such theft, loss or **Unauthorized Disclosure** first takes place on or after the **Retroactive Date** and before the end of the **Policy Period**;

2. One or more of the following acts or incidents that directly result from a failure of **Computer Security** to prevent a **Security Breach**, provided that such act or incident first takes place on or after the **Retroactive Date** and before the end of the **Policy Period**:

   (a) The alteration, corruption, destruction, deletion, or damage to a **Data Asset** stored on **Computer Systems**;

   (b) The failure to prevent transmission of **Malicious Code** from **Computer Systems** to **Third Party Computer Systems**; or

   (c) The participation by the **Insured Organization's Computer System** in a **Denial of Service Attack** directed against a **Third Party Computer System**;

3. The **Insured Organization's** failure to timely disclose an incident described in Insuring Agreement **I.A.1.** or **I.A.2.** in violation of any **Breach Notice Law**; provided such incident giving rise to the **Insured Organization's** obligation under a **Breach Notice Law** must first take place on or after the **Retroactive Date** and before the end of the **Policy Period**;

B. **Privacy Breach Response Services**

To pay on behalf of the **Insured Organization** costs to provide **Privacy Breach Response Services** in excess of the retention because of an incident (or reasonably suspected incident) described in Insuring Agreement **I.A.1.** or **I.A.2.** that first takes place on or after the **Retroactive Date** and before the end of the **Policy Period** and is discovered by the **Insured** and is reported to the Company during the **Policy Period** or as otherwise provided for in Clauses **IX. WHEN COVERAGE IS PROVIDED** and **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** of this Coverage Form. However, **Privacy Breach Response Services** shall not include any internal salary or overhead expenses of the **Insured Organization**.

1. **Privacy Breach Response Services** means the following:

   a. Services of a computer security expert to determine the existence and cause of any electronic data breach resulting in an actual or reasonably suspected theft, loss or **Unauthorized Disclosure** of **Personally Identifiable Non-Public Information** which may require the **Insured Organization** to comply with a **Breach Notice Law** and to determine the extent to which such information was accessed by an unauthorized person or persons;

   b. Services of an attorney to determine the applicability of and actions necessary by the **Insured Organization** to comply with **Breach Notice Laws** due to an actual or reasonably suspected theft, loss or **Unauthorized Disclosure** of **Personally Identifiable Non-Public Information**;

   Solely with respect to coverage provided under this Insuring Agreement **I.B.1.b.**, no retention will apply if the **Insured** (i) promptly notifies the Company of an actual or reasonably suspected theft, loss or **Unauthorized Disclosure** of **Personally Identifiable Non-Public Information**, (ii) uses an attorney recommended by the Company to determine the applicability of and actions necessary by the **Insured Organization** to comply with **Breach Notice Laws**, and (iii) uses service providers recommended by the Company for all other **Privacy Breach Response Services** covered under this Insuring Agreement **I.B.**

   c. Provision of notification to:

      (1) Individuals who are required to be notified by the **Insured Organization** under the applicable **Breach Notice Law**; and

      (2) In the Company's discretion, to individuals affected by an incident in which their **Personally Identifiable Non-Public Information** has been subject to theft, loss, or **Unauthorized Disclosure** in a manner which compromises the security or privacy of such individual by posing a significant risk of financial, reputational or other harm to the individual.

2. For incidents involving more than 250 **Notified Individuals: Privacy Breach Response Services** also means:

   a. **Call Center Services** to **Notified Individuals**; and

   b. Offer of a **Credit Monitoring Product** to **Notified Individuals** residing in the United States whose **Personally Identifiable Non-Public Information** was compromised or reasonably believed to be compromised as a result of theft, loss or **Unauthorized Disclosure**. To be covered, such offer must be provided in a mailed notification communication provided pursuant to Insuring Agreement **I.B.1.c.** above. However, if the Insured uses an attorney and other service providers recommended by the Company for all **Privacy Breach Response Services** in accordance with the second paragraph of Insuring Agreement **I.B.1.b.**, then the threshold of 250 **Notified Individuals** set forth above shall not apply to the **Credit Monitoring Product**, but the monetary retention set forth in Item **5.B.** of the Declarations will continue to apply.

**C.** Regulatory Defense and Penalties

To pay on behalf of the **Insured** for:

**Claims Expenses** and **Penalties** in excess of the retention, which the **Insured** shall become legally obligated to pay because of any **Claim** in the form of a **Regulatory Proceeding**, first made against any **Insured** during the **Policy Period** or Optional Extended Reporting Period, if applicable and reported in writing to the Company during the **Policy Period** or as otherwise provided in accordance with Clause **IX. WHEN COVERAGE IS PROVIDED** and Clause **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** during the **Policy Period** resulting from a violation of a **Privacy Law** and caused by an incident described in Insuring Agreement **I.A.1.**, **I.A.2.** or **I.A.3.** that first takes place on or after the **Retroactive Date** and before the end of the **Policy Period**.

## II.  DEFENSE AND SETTLEMENT OF CLAIMS

**A.** The Company shall have the right and duty to defend, subject to all the provisions, terms and conditions of this coverage form:

1. Any **Claim** against the **Insured** seeking **Damages** which are payable under the terms of this coverage form, even if any of the allegations of the **Claim** are groundless, false or fraudulent; and

2. Under Insuring Agreement **I.C.**, any **Claim** in the form of a **Regulatory Proceeding**.

**B.** The Limit of Liability available to pay **Damages** and **Penalties** shall be reduced and may be completely exhausted by payment of **Claims Expenses**. **Damages**, **Penalties**, and **Claims Expenses** shall be applied against the applicable retention payable by the **Insured**.

## III.  THE INSURED AND THE INSURED ORGANIZATION

As used throughout this coverage form, whether expressed in singular or plural, **Insured** shall mean:

**A.** The **Named Insured** and any subsidiaries for which the **Named Insured** has **Management Control** (and only during the time during which the **Named Insured** has **Management Control**) (together the **"Insured Organization"**);

**B.** A director, officer or **Manager** of the **Insured Organization**, but only with respect to the performance of his or her duties as such on behalf of the **Insured Organization**;

**C.** An employee (including a part time or temporary employee) of the **Insured Organization**, but only for work done while acting within the scope of his or her employment and related to the conduct of the **Insured Organization's** business;

**D.** A principal if the **Named Insured** is a sole proprietorship, or a partner if the **Named Insured** is a partnership, but only with respect to the performance of his or her duties as such on behalf of the **Insured Organization**;

**E.** Any person who previously qualified as an **Insured** under **III.B.**, **III.C.** or **III.D.** above prior to the termination of the required relationship with the **Insured Organization**, but only with respect to the performance of his or her duties as such on behalf of the I nsured Organization;

**F.** The estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would otherwise be provided coverage under this Insurance; and

**G.** The lawful spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law in the United States, of any **Insured**, but solely by reason of any act, error or omission of an **Insured** other than such spouse or domestic partner.

## IV.  TERRITORY

The coverage provided by this coverage form applies to **Claims** made, acts committed, or **Loss** occurring anywhere in the world.

## V.  EXCLUSIONS

The coverage under this coverage form does not apply to any      **Claim** or **Loss:**

**A.** For, arising out of or resulting from   **Bodily Injury** or **Property Damage;**

**B.** For, arising out of or resulting from any employer-employee  relations, policies, practices, acts or omissions, or any actual or alleged refusal to employ any person, or misconduct with respect to employees, whether such **Claim** is brought by an employee, former employee, applicant for employment, or relative or domestic partner of such person; provided, however, that this exclusion shall not apply to an otherwise covered **Claim** under Insuring Agreement **I.A.1., I.A.2.,** or **I.A.3.** by a current or former employee of the **Insured Organization;** or to **Privacy Breach Response Services** involving current or former employees of the   **Insured Organization;**

**C.** For, arising out of or resulting from any actual or alleged act, error or omission or breach of duty by any director, officer or **Manager** in the discharge of their duty if the **Claim** is brought by the **Named Insured,** a subsidiary, or any principals, directors, officers, **Managers,** stockholders, members or employees of the **Named Insured** or a subsidiary in his or her capacity as such;

**D.** For, arising out of or resulting from any contractual liability or obligation, or arising out of or resulting from breach of contract or agreement either oral or written, provided, however, that this exclusion will not apply:

    **1.** Only with respect to the coverage provided by Insuring Agreement **I.A.1.,** to any obligation of the **Insured Organization** to maintain the confidentiality or security of **Personally Identifiable Non-Public Information** or of **Third Party Corporate Information;** provided, however, that this exception shall not apply to fines, costs or other amounts an **Insured** is responsible to pay under a **Merchant Services Agreement;** or

    **2.** To the extent the  **Insured** would have been liable in the absence of such contract or agreement;

**E.** For, arising out of or resulting from any actual or alleged antitrust violation, restraint of trade, unfair competition, or false or deceptive or misleading advertising or violation of the Sherman Antitrust Act, the Clayton Act, or the Robinson-Patman Act, as amended;

**F.** For, arising out of or resulting from:

    **1.** The actual or alleged unlawful collection, acquisition or retention of **Personally Identifiable Non-Public Information** or other personal information by, on behalf of, or with the consent or cooperation of the **Insured Organization;** or the failure to comply with a legal requirement to provide individuals with the ability to assent to or withhold assent (e.g. opt-in or opt-out) from the collection, disclosure or use of **Personally Identifiable Non-Public Information;** provided, that this exclusion shall not apply to the actual or alleged unlawful collection, acquisition or retention of **Personally Identifiable Non-Public Information** by a third party committed without the knowledge of the  **Insured Organization;** or

    **2.** The distribution of unsolicited email, direct mail, or facsimiles, wire tapping, audio or video recording, or telemarketing, if such distribution, wire tapping or recording is done by or on behalf of the **Insured Organization;**

**G.** For, arising out of or resulting from any act, error, omission, incident or failure of **Computer Security,** or **Security Breach** committed or occurring prior to the effective date of this coverage form:

    **1.** If any member of the **Control Group** on or before the earlier of (i) the effective date of this coverage form, or (ii) if the policy to which this coverage form is attached is a renewal, the effective date of the first policy issued by the Company to the **Named Insured,** provided that the policy to which this coverage form is attached is a continuous renewal or replacement and this coverage form was included on all such renewals or replacements, knew or could have reasonably foreseen that such act, error or omission, incident, failure of **Computer Security,** or **Security Breach** might be expected to be the basis of a   **Claim** or **Loss;** or

2. In respect of which any **Insured** has given notice of a circumstance, which might lead to a **Claim** or **Loss**, to the insurer of any other policy in force prior to the effective date of this coverage form;

**H.** For, arising out of or resulting from any related or continuing acts, errors, omissions, incidents or events, where the first such act, error, omission, incident or event was committed or occurred prior to the **Retroactive Date**;

**I.** For, arising out of, or resulting from any actual or alleged violation of:

1. The Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced and Corrupt Organizations Act or RICO), as amended;

2. Any actual or alleged violation of any securities law, regulation or legislation;

3. Any actual or alleged violation of the Fair Labor Standards Act of 1938, the National Labor Relations Act, the Worker Adjustment and Retraining Act of 1988, the Certified Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act of 1970, each as or any law or legislation similar to the above; amended;

**J.** Arising out of or resulting from any criminal, dishonest, fraudulent, or malicious act, error or omission, any intentional **Security Breach**, or intentional or knowing violation of the law, if committed by any present or former member of the **Control Group**, or by others if any present or former member of the **Control Group** colluded or participated in any such conduct or activity;

**K.** For, arising out of, or resulting from any actual or alleged:

1. Infringement of patent or patent rights or misuse or abuse of patent;

2. Infringement of copyright;

3. Use or misappropriation of any ideas, trade secrets or **Third Party Corporate Information** (i) by, or on behalf of, the **Insured Organization**, or (ii) by any other person or entity if such use or misappropriation is done with the knowledge, consent or acquiescence of a member of the **Control Group**;

4. Disclosure, misuse or misappropriation of any ideas, trade secrets or confidential information that came into the possession of any person or entity prior to the date the person or entity became an employee, officer, director, **Manager**, principal, partner or subsidiary of the **Insured Organization**; or

5. Under Insuring Agreement I.A.2., theft of or **Unauthorized Disclosure** of a **Data Asset**;

**L.** For, in connection with, or resulting from a **Claim** brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any other state, federal, local or foreign governmental entity, in such entity's regulatory or official capacity; provided, this exclusion shall not apply to an otherwise covered **Claim** under Insuring Agreement **I.C.** or to the providing of **Privacy Breach Response Services** under Insuring Agreement **I.B.** to the extent such services are legally required to comply with a **Breach Notice Law**;

**M.** For, arising out of, or resulting from a **Claim** by or on behalf of one or more **Insureds** under this Insurance against any other **Insured** or **Insureds** under this Insurance; provided this exclusion shall not apply to an otherwise covered **Claim** under Insuring Agreement **I.A.1.**, **I.A.2.**, or **I.A.3.** made by a current or former employee of the **Insured Organization**;

**N.** For, arising out of, or resulting from:

1. Any **Claim** made by any business enterprise in which any **Insured** has greater than a fifteen percent (15%) ownership interest or made by any parent company or other entity which owns more than fifteen percent (15%) of the **Named Insured**; or

2. The **Insured's** activities as a trustee, partner, member, **Manager**, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the **Insured Organization**;

**O.** For, arising out of, or resulting from any of the following: (1) trading losses, trading liabilities or change in value of accounts; any loss, transfer or theft of monies, securities or tangible property of others in the care, custody or control of the **Insured Organization**; (2) the monetary value of any transactions or electronic fund transfers by or on behalf of the **Insured** which is lost, diminished, or damaged during transfer from, into or between accounts; or (3) the value of coupons, price discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount;

**P.** For, arising out of, or resulting from the distribution, exhibition, performance, publication, display or broadcasting of content or material in broadcasts, publications, or advertising;

**Q.** Arising out of or resulting from, directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

**R.** Either in whole or in part, directly or indirectly arising out of or resulting from, or in consequence of, or in any way involving:

1. Asbestos, or any materials containing asbestos in whatever form or quantity;

2. The actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind; any action taken by any party in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins; and any governmental or regulatory order, requirement, directive, mandate or decree that any party take action in response to the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of fungi, molds, spores or mycotoxins of any kind, such action to include investigating, testing for, detection of, monitoring of, treating, remediating or removing such fungi, molds, spores or mycotoxins.

   The Company will have no duty or obligation to defend any **Insured** with respect to any **Claim** or governmental or regulatory order, requirement, directive, mandate or decree which either in whole or in part, directly or indirectly, arises out of or results from or in consequence of, or in any way involves the actual, potential, alleged or threatened formation, growth, presence, release or dispersal of any fungi, molds, spores or mycotoxins of any kind;

3. The existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property; or

4. The actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or any governmental, judicial or regulatory directive or request that the **Insured** or anyone acting under the direction or control of the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including gas, acids, alkalis, chemicals, heat, smoke, vapor, soot, fumes or waste. Waste includes but is not limited to materials to be recycled, reconditioned or reclaimed.

## VI. DEFINITIONS

**A. Bodily Injury** means physical injury, sickness, disease or death of any person, including any mental anguish or emotional distress resulting therefrom.

**B. Breach Notice Law** means any United States federal, state, or territory statute or regulation that requires notice to persons whose **Personally Identifiable Non-Public Information** was accessed or reasonably may have been accessed by an unauthorized person.

**Breach Notice Law** also means a foreign statute or regulation that requires notice to persons whose **Personally Identifiable Non-Public Information** was accessed or reasonably may have been accessed by an unauthorized person; provided, however, that the **Credit Monitoring Product** provided by Insuring Agreement **I.B.2.b.** shall not apply to persons notified under Insuring Agreement **I.B.1.c.** pursuant to a foreign statute or regulation.

C. **Call Center Services** means coverage for a call center to answer calls during standard business hours for a period of 90 days (or longer if required by applicable law or regulation) following the issuance of a notification communication pursuant to Insuring Agreement **I.B.1.c.** Such notification communication shall include a toll free telephone number that connects to the call center during standard business hours. Call center employees will answer questions about the incident from **Notified Individuals** and will provide information required by a HIPAA/Health Information Technology for Economic and Clinical Health Act ("HITECH") media notice or by other applicable law or regulation. **Call Center Services** will only be covered for incidents involving more than 250 **Notified Individuals**, subject also to satisfaction of the monetary retention set forth in Item **4.B.** of the Declarations.

D. **Claim** means:

1. A written demand received by any **Insured** for money or services, including the service of a suit or institution of regulatory or arbitration proceedings;

2. With respect to coverage provided under Insuring Agreement **I.C.** only, institution of a **Regulatory Proceeding** against any **Insured**; and

3. A written request or agreement to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph 1. above.

Multiple **Claims** arising from the same or a series of related or repeated acts, errors, or omissions, or from any continuing acts, errors, omissions, or from multiple **Security Breaches** arising from a failure of **Computer Security**, shall be considered a single **Claim** for the purposes of this coverage form, irrespective of the number of claimants or **Insureds** involved in the **Claim**. All such **Claims** shall be deemed to have been made at the time of the first such **Claim**.

E. **Claims Expenses** means:

1. Reasonable and necessary fees charged by an attorney designated by the Company;

2. All other legal costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, suit, or proceeding arising in connection therewith, or circumstance which might lead to a **Claim**, if incurred by the Company, or by the **Insured** with the prior written consent of the Company; and

3. The premium cost for appeal bonds for covered judgments or bonds to release property used to secure a legal obligation, if required in any **Claim** against an **Insured**; provided the Company shall have no obligation to appeal or to obtain bonds.

**Claims Expenses** do not include any salary, overhead, or other charges by the **Insured** for any time spent in cooperating in the defense and investigation of any **Claim** or circumstance that might lead to a **Claim** notified under this coverage form, or costs to comply with any regulatory orders, settlements or judgments.

F. **Computer Security** means software, computer or network hardware devices, as well as the **Insured Organization's** written information security policies and procedures, the function or purpose of which is to prevent **Unauthorized Access or Use**, a **Denial of Service Attack** against **Computer Systems**, infection of **Computer Systems** by **Malicious Code** or transmission of **Malicious Code** from **Computer Systems**. **Computer Security** includes anti-virus and intrusion detection software, firewalls and electronic systems that provide access control to **Computer Systems** through the use of passwords, biometric or similar identification of authorized users.

G. **Computer Systems** means computers and associated input and output devices, data storage devices, networking equipment, and back up facilities:

1. Operated by and either owned by or leased to the I  nsured Organization; or

2. Systems operated by a third party service provider and used for the purpose of providing hosted computer application services to the **Insured Organization** or for processing, maintaining, hosting or storing the **Insured Organization's** electronic data, pursuant to written contract with the **Insured Organization** for such services.

H. **Control Group** means the individuals holding the following positions in the **Insured Organization**: President; members of the Board of Directors; executive officers, including the Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer; General Counsel, staff attorneys employed by the **Insured Organization**; Chief Information Officer; Chief Security Officer; Chief Privacy Officer; **Manager**; and any individual in a substantially similar position as those referenced above, or with substantially similar responsibilities as those referenced above, irrespective of the exact title of such individual and any individual who previously held any of the above referenced positions.

I. **Credit Monitoring Product** means a credit monitoring product that provides three-bureau daily credit monitoring and the following services to **Notified Individuals** who subscribe to the **Credit Monitoring Product**:

1. Access to their credit report from one of the three credit bureaus at the time of enrollment;

2. ID theft insurance for certain expenses resulting from identity theft;

3. Notification of a critical change to their credit that may indicate fraud (such as an address change, new credit inquiry, new account opening, posting of negative credit information such as late payments, and public record posting); and

4. Fraud resolution services if they become victims of identity theft as a result of the incident for which notification is provided pursuant to Insuring Agreement **I.B.1.c.**

Each **Notified Individual** will have a period of up to 60 days from the mailing of the notification to enroll and the **Credit Monitoring Product** will be available for 12 months following the individual's enrollment. To be eligible, the individual must be an adult U.S. Citizen, must verify their identity, have a credit file on record, complete the enrollment process, and must agree to the terms of service of the **Credit Monitoring Product**.

If the **Credit Monitoring Product** becomes commercially unavailable, it shall be substituted with a similar commercial product that provides individual credit monitoring for potential identity theft.

J. **Data Asset** means any software or electronic data that exists in **Computer Systems** and that is subject to regular back up procedures, including computer programs, applications, account information, customer information, private or personal information, marketing information, financial information and any other information maintained by the **Insured Organization** in its ordinary course of business.

K. **Damages** means a monetary judgment, award or settlement; provided that the term **Damages** shall not include or mean:

1. Future profits, restitution, disgorgement of unjust enrichment or profits by an **Insured**, or the costs of complying with orders granting injunctive or equitable relief;

2. Any damages which are a multiple of compensatory damages, fines, taxes or loss of tax benefits, sanctions or penalties;

3. Punitive or exemplary damages, unless insurable by law;

4. Discounts, coupons, prizes, awards or other incentives offered to the **Insured's** customers or clients;

5. Liquidated damages to the extent that such damages exceed the amount for which the **Insured** would have been liable in the absence of such liquidated damages agreement; or

    6. Any amounts for which the **Insured** is not liable, or for which there is no legal recourse against the **Insured**.

L. **Denial of Service Attack** means an attack intended by the perpetrator to overwhelm the capacity of a **Computer System** by sending an excessive volume of electronic data to such **Computer System** in order to prevent authorized access to such **Computer System**.

M. **Loss** means **Damages**, **Claims Expenses**, **Penalties**, and **Privacy Breach Response Services**.

N. **Malicious Code** means any virus, Trojan horse, worm or any other similar software program, code or script intentionally designed to insert itself into computer memory or onto a computer disk and spread itself from one computer to another.

O. **Management Control** means:

    1. Owning, directly or indirectly, more than 50 percent (50%) of the outstanding securities representing the present right to vote for the election of an entity's directors (in the case of a corporation), members of the board of managers (in the case of a limited liability company), management committee members (in the case of a joint venture or partnership) or persons serving in a functionally equivalent role for such an entity operating or organized outside of the United States; or

    2. Having the right, pursuant to a written contract or the bylaws, charter, operating agreement or similar documents of an entity to elect, appoint or designate a majority of: the board of directors of a corporation; the management committee of a joint venture or partnership; the management board of a limited liability company; or persons serving in a functionally equivalent role for such an entity operating or organized outside of the United States.

P. **Manager** means a manager of a limited liability company.

Q. **Merchant Services Agreement** means any agreement between an **Insured** and a financial institution, credit/debit card company, credit/debit card processor or independent service operator enabling an **Insured** to accept credit card, debit card, prepaid card, or other payment cards for payments or donations.

R. **Named Insured** means the entity or individual set forth in Item 1. of the Declarations.

S. **Notified Individual** means an individual person to whom notice is given or attempted to be given under Insuring Agreement **I.B.1.c.**; provided any persons notified under a foreign **Breach Notice Law** shall not be considered **Notified Individuals**.

T. **Optional Extended Reporting Period** means the period of time after the end of the **Policy Period** for reporting **Claims** as provided in Clause **IX.D.**, **Optional Extended Reporting Period**, of this coverage form.

U. **Penalties** means:

    1. Any civil fine or money penalty payable to a governmental entity that was imposed in a **Regulatory Proceeding** by the Federal Trade Commission, Federal Communications Commission, or any other federal, state, local or foreign governmental entity, in such entity's regulatory or official capacity; and

    2. Amounts which the **Insured** is legally obligated to deposit in a fund as equitable relief for the payment of consumer claims due to an adverse judgment or settlement of a **Regulatory Proceeding** (including such amounts required to be paid into a "Consumer Redress Fund"); but and shall not include payments to charitable organizations or disposition of such funds other than for payment of consumer claims for losses caused by an event covered by Insuring Agreements **A.1.**, **A.2.** or **A.3.**;

but shall not mean (a) costs to remediate or improve **Computer Systems**, (b) costs to establish, implement, maintain, improve or remediate security or privacy practices, procedures, programs or policies, (c) audit, assessment, compliance or reporting costs, or (d) costs to protect the confidentiality, integrity and/or security of **Personally Identifiable Non-Public Information** from theft, loss or disclosure, even if it is in response to a regulatory proceeding or investigation.

V. **Personally Identifiable Non-Public Information** means:

1. Information concerning the individual that constitutes "nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

2. Medical or heath care information concerning the individual, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulations issued pursuant to the Act;

3. Information concerning the individual that is defined as private personal information under statutes enacted to protect such information in foreign countries, for **Claims** subject to the law of such jurisdiction;

4. Information concerning the individual that is defined as private personal information under a **Breach Notice Law**; or

5. The individual's drivers license or state identification number; social security number; unpublished telephone number; and credit, debit or other financial account numbers in combination with associated security codes, access codes, passwords or pins;

if such information allows an individual to be uniquely and reliably identified or contacted or allows access to the individual's financial account or medical record information but does not include publicly available information that is lawfully made available to the general public from government records.

W. **Coverage Form Aggregate Limit of Liability** means the aggregate Limit of Liability set forth in Item **4.** of the Declarations.

X. **Policy Period** means the policy period as set forth in Item **2.** of the Declarations.

Y. **Privacy Law** means a federal, state or foreign statute or regulation requiring the **Insured Organization** to protect the confidentiality and/or security of **Personally Identifiable Non-Public Information**.

Z. **Property Damage** means physical injury to or destruction of any tangible property, including the loss of use thereof.

AA. **Regulatory Proceeding** means a request for information, civil investigative demand, or civil proceeding commenced by service of a complaint or similar proceeding brought by or on behalf of the Federal Trade Commission, Federal Communications Commission, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity in connection with such proceeding.

BB. **Retroactive Date** means the date specified in Item **3.** of the Declarations.

CC. **Security Breach** means:

1. **Unauthorized Access or Use of Computer Systems**, including **Unauthorized Access or Use** resulting from the theft of a password from a **Computer System** or from any **Insured**;

2. A **Denial of Service Attack** against **Computer Systems** or **Third Party Computer Systems**; or

3. Infection of **Computer Systems** by **Malicious Code** or transmission of **Malicious Code** from **Computer Systems**,

whether any of the foregoing is a specifically targeted attack or a generally distributed attack.

A series of continuing **Security Breaches**, related or repeated **Security Breaches**, or multiple **Security Breaches** resulting from a continuing failure of **Computer Security** shall be considered a single **Security Breach** and be deemed to have occurred at the time of the first such **Security Breach**.

DD. **Third Party Computer Systems** means any computer systems that are not owned, operated or controlled by an **Insured**; but does not include computer systems of a third party on which an **Insured** performs services. Computer systems include associated input and output devices, data storage devices, networking equipment, and back up facilities.

EE. **Third Party Corporate Information** means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not insured under this coverage form which is not available to the general public and is provided to the **Insured** subject to a mutually executed written confidentiality agreement or which the **Insured Organization** is legally required to maintain in confidence; however, **Third Party Corporate Information** shall not include **Personally Identifiable Non-Public Information**.

FF. **Unauthorized Access or Use** means the gaining of access to or use of **Computer Systems** by an unauthorized person or persons or the use of **Computer Systems** in an unauthorized manner.

GG. **Unauthorized Disclosure** means the disclosure of or access to information in a manner that is not authorized by the **Insured Organization** and is without knowledge of, consent, or acquiescence of any member of the **Control Group**.

## VII.   LIMIT OF LIABILITY AND COVERAGE

A.   The **Coverage Form Aggregate Limit of Liability** stated in Item **4.** of the Declarations is the Company's combined total limit of liability for all **Damages**, **Penalties**, **Privacy Breach Response Services**, and **Claims Expenses** payable under this coverage form. The **Coverage Form Aggregate Limit of Liability** is in addition to the overall Limits of Insurance provided under the policy to which this coverage form is attached.

Neither the inclusion of more than one **Insured** under this coverage form, nor the making of **Claims** by more than one person or entity shall increase the combined total limit of liability payable under this coverage form.

B.   The Company shall not be obligated to pay any **Damages**, **Penalties**, **Privacy Breach Response Services** or **Claims Expenses**, or to undertake or continue defense of any suit or proceeding, after the **Coverage Form Aggregate Limit of Liability** set forth in the Declarations has been exhausted by payment of **Damages**, **Penalties**, **Privacy Breach Response Services**, or **Claims Expenses**, or after deposit of the **Coverage Form Aggregate Limit of Liability** in a court of competent jurisdiction. Upon such payment, the Company shall have the right to withdraw from the further defense of any **Claim** under this coverage form by tendering control of said defense to the **Insured**.

## VIII.  RETENTION

A.   The retention set forth in Item **5.A.** of the Declarations applies separately to each incident, event or related incidents or events, giving rise to a **Claim**. The retention shall be satisfied by monetary payments by the **Named Insured** of **Damages**, **Claims Expenses** or **Penalties**.

B.   The retention set forth in Item **5.B.** of the Declarations applies separately to each incident, event or related incidents or events, giving rise to a **Claim** or an obligation to provide **Privacy Breach Response Services**. The retention shall be satisfied by monetary payments by the **Named Insured** for the corresponding **Privacy Breach Response Services**.

C.   Satisfaction of the applicable retention is a condition precedent to the payment by the Company of any amounts hereunder, and the Company shall be liable only for the amounts in excess of such retention subject to the Company's total liability not exceeding the **Coverage Form Aggregate Limit of Liability**. The **Named Insured** shall be responsible for all payments within the retention and shall make all such payments directly to the other parties designated by the Company.

## IX.   WHEN COVERAGE IS PROVIDED

**A.** This coverage form applies only to **Claims** first made or brought during the **Policy Period** and which are reported to the Company in accordance with the notice provisions as set forth in Clause **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM**.

**B.** All **Claims** arising from the same or a series of related or repeated acts, errors, or omissions, or from any continuing acts, errors, omissions, or from multiple **Security Breaches** arising from a failure of **Computer Security**, shall be considered a single **Claim** for the purposes of this coverage form, irrespective of the number of claimants or **Insureds** involved in the **Claim**. All claims because of one failure of **Computer Security** to prevent a **Security Breach** will be considered to have been made or brought on the date that the first of those    **Claims** were first made or brought.

**C. Limited Reporting Period**

With respect to a **Claim** provided for under Insuring Agreement **I.A.**, or an incident that gives rise to coverage under Insuring Agreement **I.B.**, first made against an Insured during the **Policy Period**, the Insured shall report such **Claim** in accordance with Clause **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** as soon as practicable, but in no event shall such notice be given later than 30 days after the    **Policy Period** ends.

**D. Optional Extended Reporting Period**

**1.** In the event of the termination of this coverage form for any reason except the non-payment of premium, the **Named Insured** designated in Item **1.** of the Declarations shall have the right, in exchange for payment of an additional premium, to have issued an endorsement providing an **Optional Extended Reporting Period** of up to 12 months for **Claims** first made against any **Insured** and reported to the Company during the **Optional Extended Reporting Period**, and arising out of any act, error or omission committed on or after the **Retroactive Date** and before the end of the **Policy Period**, subject to the conditions set forth herein. In order for the **Named Insured** to invoke the **Optional Extended Reporting Period** option, the payment of the additional premium for the **Optional Extended Reporting Period** must be paid to the Company within 30 days of the termination of this Insurance. If notice of election of the **Optional Extended Reporting Period** and full premium payment is not given to the Company within such 30 day period, there shall be no right to purchase the **Optional Extended Reporting Period**.

**2.** The Limit of Liability for the **Optional Extended Reporting Period** shall be part of, and not in addition to, the **Coverage Form Aggregate Limit of Liability** for the **Policy Period** and the exercise of the **Optional Extended Reporting Period** shall not in any way increase the **Coverage Form Aggregate Limit of Liability**. The **Optional Extended Reporting Period** does not apply to Insuring Agreement  **I.B.**

**3.** The right to the **Optional Extended Reporting Period** shall not be available to the **Named Insured** where the premium for the policy to which this coverage form is attached has not been paid in full, or where cancellation or non-renewal by the Company is due to non-payment of premium or failure of an **Insured** to pay such amounts in excess of the applicable limit of liability or within the amount of the retention.

**4.** The additional premium for a 12 month **Optional Extended Reporting Period** will be 100 percent (100%) of the premium charged for the last Policy Period. Once that premium is paid, the **Optional Extended Reporting Period** endorsement may not be cancelled, the entire premium shall be fully earned, and in the event the **Named Insured** terminates the **Optional Extended Reporting Period** for any reason prior to its natural expiration, the Company will not be liable to return any premium paid for the   **Optional Extended Reporting Period**.

X.   NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM

   A.   If any **Claim** is made against the **Insured**, the **Insured** shall forward as soon as practicable to the Company, through persons named in Item **6.** of the Declarations, written notice of such **Claim** together with every demand, notice, summons or other process received by the **Insured** or the **Insured's** representative. In no event shall such notice to the Company be later than the end of the **Policy Period**, or as otherwise provided for in Clause **IX.C. Limited Reporting Period** or Clause **IX.D. Optional Extended Reporting Period**.

   B.   With respect to Insuring Agreement **I.B.**, for the costs of any legal obligation to comply with a **Breach Notice Law** because of an incident described in Insuring Agreement **I.A.1.** or **I.A.2.**, such incident must be reported as soon as practicable during the **Policy Period**, or as otherwise provided for in Clause **IX.C. Limited Reporting Period** or Clause **IX.D. Optional Extended Reporting Period**. If this coverage form and the policy to which this coverage form is attached is renewed by the Company and **Privacy Breach Response Services** are provided because of such incident or suspected incident that was discovered by the **Insured**, and first reported during the Limited Reporting Period or Optional Extended Reporting Period, then any subsequent **Claim** arising out of such incident or suspected incident is deemed to have been made during the **Policy Period**.

   C.   If during the **Policy Period**, the **Insured** first becomes aware of any circumstance that could reasonably be the basis for a **Claim** it may give written notice to the Company through persons named in Item **6.** of the Declarations as soon as practicable during the **Policy Period**. Such a notice must include:

      1.   The specific details of the act, error, omission, or **Security Breach** that could reasonably be the basis for a **Claim**;

      2.   The injury or damage which may result or has resulted from the circumstance; and

      3.   The facts by which the **Insured** first became aware of the act, error, omission or **Security Breach**.

      Any subsequent **Claim** made against the **Insured** arising out of such circumstance which is the subject of the written notice will be deemed to have been made at the time written notice complying with the above requirements was first given to the Company.

   D.   A **Claim** or legal obligation under paragraph **A.** or **B.** above shall be considered to be reported to the Company when written notice is first received by the Company through persons named in Item **6.** of the Declarations of the **Claim** or legal obligation, or of an act, error, or omission, which could reasonably be expected to give rise to a **Claim** if provided in compliance with paragraph **C.** above.

XI.   ASSISTANCE AND COOPERATION

   A.   The Company shall have the right to make any investigation it deems necessary, and the **Insured** shall cooperate with the Company in all investigations. The **Insured** shall execute or cause to be executed all papers and render all assistance as is requested by the Company. The **Insured** agrees not to take any action which in any way increases the Company's exposure under this coverage form.

   B.   Upon the Company's request, the **Insured** shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured** because of acts, errors or omissions, incidents or events with respect to which insurance is afforded under this coverage form; and the **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

C.   In connection with the **Privacy Breach Response Services** covered under Insuring Agreement **I.B.**, the **Insured** must assist and cooperate with the Company and any third parties assisting with the provision of **Privacy Breach Response Services**. Such assistance and cooperation shall include, without limitation, responding to requests and inquiries in a timely manner and entering into contracts required for the provision of   **Privacy Breach Response Services**.

D.   The **Insured** shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or dispose of any **Claim** without the written consent of the Company.

Compliance with a **Breach Notice Law** will not be considered as an admission of liability for purposes of this Clause  **XI.D.**

## XII.   MERGERS OR CONSOLIDATIONS

If during the **Policy Period** the **Named Insured** consolidates  or merges with or is acquired by another entity, or sells substantially all of its assets to any other entity, then this coverage form shall remain in full force and effect, but only with respect to a **Security Breach**, or other act or incidents that occur prior to the date of the consolidation, merger or acquisition. There shall be no coverage provided by this coverage form for any other   **Claim** or **Loss**.

## XIII.   ASSIGNMENT

The interest hereunder of any **Insured** is not assignable. If the **Insured** shall die or be adjudged incompetent, such insurance shall cover the **Insured's** legal representative as the **Insured** as would be permitted under this coverage form.

## XIV.   CANCELLATION

The **Named Insured** may only cancel this policy by mailing to the Company written notice stating when, not less than thirty (30) days thereafter such cancellation shall be effective. The Company may cancel this policy for any reason, including non-payment of premium, by mailing to the **Named Insured** at the address shown in the Declarations, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient  proof of notice. The effective  date and hour of cancellation as stated in the notice shall become the end of the   **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

If this policy is cancelled, the Company will send the **Named Insured** any unearned premium refund due. If the Company cancels, the refund will be pro rata. Refund premium adjustments may be made at the time cancellation  becomes effective, but payment or tender of unearned premium  is not a condition of cancellation.

If the **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund. However, premium shall be deemed fully earned if any **Claim** under this policy is reported to the Company on or before the date of cancellation.

## XV.   NONRENEWAL

If the Company decides not to renew this policy, the Company will mail or deliver to the first **Named Insured** shown in the Declarations, written notice of the non-renewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient notice of non-renewal.

## XVI.   BANKRUPTCY

Bankruptcy or insolvency of the **Named Insured** shall not relieve the Company of its obligations under this coverage form.

XVII.  **ACTION AGAINST THE COMPANY**

No action shall lie against the Company unless, as a condition precedent thereto, the **Insured** shall have fully complied with all terms of this coverage form nor until the amount of the **Insured's** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and the Company. Nothing contained herein shall give any person or organization any right to join the Company as a party to any **Claim** against the **Insured** to determine their liability, nor shall the Company be impleaded by the **Insureds** or their legal representatives in any **Claim**.

XVIII.  **SUBROGATION**

In the event of any payment under this coverage form, the Company shall be subrogated to all the **Insureds'** rights of recovery therefore against any person or organization, and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights. Any recoveries shall be applied first to subrogation expenses, second to **Damages, Penalties, Privacy Breach Response Services** and **Claims Expenses** paid by the Company, and third to the retention. Any additional amounts recovered shall be paid to the **Named Insured**.

XIX.  **NAMED INSURED AS AGENT**

The **Named Insured** shall be considered the agent of all **Insureds**, and shall act on behalf of all **Insureds** with respect to the giving of or receipt of all notices pertaining to this coverage form, and the **Named Insured** shall be responsible for the payment of all premiums and retentions.

XX.  **ENTIRE AGREEMENT**

By acceptance of this coverage form, all **Insureds** agree that this coverage form embodies all agreements between them and the Company relating to this coverage form. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this coverage form or estop the Company from asserting any right under the terms of this coverage form; nor shall the terms of this coverage form be waived or changed, except by written endorsement issued to form a part of this coverage form, signed by the Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

 **FARMERS** INSURANCE

**W2272**
**WASHINGTON**
**2nd Edition**

## WASHINGTON AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**CYBER LIABILITY AND DATA BREACH EXPENSE COVERAGE FORM**

**A. I. INSURING AGREEMENTS A. Information Security and Privacy Liability** is amended to add the words "or Automatic" after the word "Optional".

**B. I. INSURING AGREEMENTS C. Regulatory Defense and Penalties** is amended to add the words "or Automatic" after the word "Optional".

**C. II. DEFENSE AND SETTLEMENT OF CLAIMS** is amended by the addition of the following:

**C.** If we initially defend an insured or pay for an insured's defense but later determine that none of the **Claims**, for which we provided a defense and incurred **Claims Expenses**, are covered under this insurance, we have the right to reimbursement for the **Claims Expenses** we have incurred.

The right to reimbursement under this provision will only apply to the defense costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of **Claims Expenses** and to seek reimbursement for **Claims Expenses**.

**D. IX. WHEN COVERAGE IS PROVIDED C. Limited Reporting Period** and **D. Optional Extended Reporting Period** are deleted and replaced with the following:

**C. Automatic Extended Reporting Period**

If this Coverage Form is cancelled or non-renewed by the Company or by the **Named Insured**, then the **Named Insured** designated in Item **1.** of the Declarations shall have an automatic extension of the coverage granted by this Coverage Form with respect to any **Claim** first made against any **Insured** and reported in writing to the Company during a period of 30 days after the end of the **Policy Period**, following the effective date of cancellation or nonrenewal, but only with respect to any act, error or omission committed or arising on or after the Retroactive Date and before the effective date of cancellation or non-renewal. This period shall be referred to herein as the "Automatic Extended Reporting Period".

**D. Optional Extended Reporting Period**

**1.** If this Coverage Form is cancelled or non-renewed by the Company or by the **Named Insured**, then the **Named Insured** designated in Item **1.** of the Declarations shall have the right, upon payment of an additional premium, to an extension of the coverage granted by this Coverage Form with respect to any **Claim** first made against any **Insured** and reported in writing to the Company within 12 months after the end of the Automatic Extension Period, but only with respect to any act, error or omission committed or arising on or after the Retroactive Date and before the effective date of cancellation or non-renewal. The additional premium for a 12 month **Optional Extended Reporting Period** will be 100 percent (100%) of the premium charged for the last Policy Period.

**2.** As a condition precedent to the right to purchase the **Optional Extended Reporting Period**, the total premium for this Coverage Form must have been paid. The right to purchase the **Optional Extended Reporting Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extended Reporting Period** is given to the Company within 60 days after the effective date of cancellation or nonrenewal. If such notice and premium payment is not so given to the Company, there shall be no right to purchase the **Optional Extended Reporting Period**.

3. In the event of the purchase of the **Optional Extension Period**, the entire premium for the **Optional Extension Period** shall be deemed earned at its commencement.

4. The Automatic Extended Reporting Period and the purchase of the **Optional Extended Reporting Period** shall not in any way increase the Limit of Liability of the Company.

E. **X. NOTICE OF CLAIM, LOSS OR CIRCUMSTANCE THAT MIGHT LEAD TO A CLAIM** is amended by deleting references to "IX.C. **Limited Reporting Period**" and replacing them with "IX.C. **Automatic Extended Reporting Period**".

F. **XIV. CANCELLATION** is amended by deleting the first paragraph and replacing it with the following:

This Coverage Form may be cancelled by the **Named Insured**, by notifying the Company or the insurance agent or broker of record in one of the following ways:

1. Written notice by mail, fax or e-mail;

2. Surrender of this coverage form; or

3. Verbal notice.

Upon receipt of such notice, the Company will cancel this coverage form effective on the later of the following:

1. The date on which notice is received or the coverage form is surrendered; or

2. The date of cancellation requested by the   **Named Insured**.

The Company may cancel this coverage form by mailing or delivering to the **Named Insured**, at the address shown in the Declarations, written notice stating when, not less than 45 days thereafter, such cancellation shall be effective. However, if the Company cancels this coverage form because the **Insured** has failed to pay a premium when due, this Coverage Form may be cancelled by the Company by mailing or delivering a written notice of cancellation to the **Named Insured**, at the address shown in the Declarations, stating when not less than ten (10) days thereafter such cancellation shall be effective.

Notice of cancellation shall be sent at the same time to the **Named Insured's** agent, or broker of record, and to the mortgagee or pledgee, if applicable, at their last mailing address known by the Company. The notice shall state the reason for cancellation. Notice of cancellation shall also be sent to any other person shown in the policy to have an interest in any **Damages** and **Claims Expenses** afforded coverage under this coverage form, at their last mailing address known by the Company. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Company shall be equivalent to mailing.

G. **XV. NONRENEWAL** is amended by the addition of the following:

The notice shall state the reason for nonrenewal. Notice of nonrenewal shall be sent at the same time to the **Named Insured's** agent, or broker of record, at their last mailing address known by the Company. Notice of nonrenewal shall also be sent to any other person shown in the policy to have an interest in any **Damages** and **Claims Expenses** afforded coverage under this coverage form, at their last mailing address known by the Company.

H. **XIX. NAMED INSURED AS AGENT** is deleted and replaced with the following:

**XIX.   NAMED INSURED AS AGENT**

The **Named Insured** shall be considered the agent of all **Insureds**, and shall act on behalf of all **Insureds** with respect to the giving of notices pertaining to this coverage form, and the **Named Insured** shall be responsible for the payment of all premiums and retentions.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

# BUSINESSOWNERS SPECIAL
# PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H** - Property Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this policy, means the type of property as described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

  **(a)** Machinery; and

  **(b)** Equipment;

(4) Your personal property in apartments or rooms furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

  **(a)** Fire extinguishing equipment;

  **(b)** Outdoor furniture;

  **(c)** Floor coverings; and

  **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

  **(a)** Additions under construction, alterations and repairs to the buildings or structures;

  **(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition **E.6.d.(3)(b)**;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

  **(a)** Made a part of the building or structure you occupy but do not own; and

  **(b)** You acquired or made at your expense but cannot legally remove; and

(4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **A.1.b.(2)**.

 Copyright, Insurance Services Office, Inc., 1999

2. **Property Not Covered**

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money and Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat.

3. **Covered Causes Of Loss**

Risks Of Direct Physical Loss unless the loss is:

a. Excluded in Section **B.,** Exclusions; or

b. Limited in Paragraph **A.4.,** Limitations;

that follow.

4. **Limitations**

a. We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Optional Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

b. With respect to glass (other than glass building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occurrence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

This Limitation does not apply to loss or damage by the "specified causes of loss", except vandalism.

c. We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the "specified causes of loss" or building glass breakage. This restriction does not apply to:

(1) Glass that is part of the interior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

d. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

   Copyright, Insurance Services Office, Inc., 1999

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

**a. Debris Removal**

**(1)** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(a)** The date of direct physical loss or damage; or

**(b)** The end of the policy period.

**(2)** The most we will pay under this Additional Coverage is 25% of:

**(a)** The amount we pay for the direct physical loss of or damage to Covered Property; plus

**(b)** The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in Paragraph **(4)** below.

**(3)** This Additional Coverage does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(4)** If:

**(a)** The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

**(b)** The debris removal expense exceeds the amount payable under the 25% Debris Removal Coverage limitation in Paragraph **(2)** above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

**d. Collapse**

**(1)** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

**(a)** The "specified cause of loss" or breakage of building glass, all only as insured against in this policy;

**(b)** Hidden decay;

**(c)** Hidden insect or vermin damage;

**(d)** Weight of people or personal property;

**(e)** Weight of rain that collects on a roof;

**(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(a)** through **d.(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

   Copyright, Insurance Services Office, Inc., 1999

**(2)** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

    **(a)** The personal property which collapses is inside a building insured under this policy; and

    **(b)** The collapse was caused by a cause of loss listed in **d.(1)(a)** through **d.(1)(f)** above.

**(3)** With respect to the following property:

    **(a)** Awnings;

    **(b)** Gutters and downspouts;

    **(c)** Yard fixtures;

    **(d)** Outdoor swimming pools;

    **(e)** Piers, wharves and docks;

    **(f)** Beach or diving platforms or appurtenances;

    **(g)** Retaining walls; and

    **(h)** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(f)**, we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

**(4)** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**e. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f. Business Income**

**(1) Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

    **(a)** The portion of the building which you rent, lease or occupy; and

    **(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage.

Business Income means the:

    **(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

    **(ii)** Continuing normal operating expenses incurred, including payroll.

Copyright, Insurance Services Office, Inc., 1999

Ordinary payroll expenses mean payroll expenses for all your employees except:

**(a)** Officers;

**(b)** Executives;

**(c)** Department Managers;

**(d)** Employees under contract; and

**(e)** Additional Exemptions shown in the Declarations as:

    **(i)** Job Classifications; or

    **(ii)** Employees.

Ordinary payroll expenses include:

**(a)** Payroll;

**(b)** Employee benefits, if directly related to payroll;

**(c)** FICA payments you pay;

**(d)** Union dues you pay; and

**(e)** Workers' compensation premiums.

**(2) Extended Business Income**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

    **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

    **(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

**g. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**(a)** The portion of the building which you rent, lease or occupy; and

**(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

    **(i)** At the described premises; or

    **(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations".

**(c)** To:

  **(i)** Repair or replace any property; or

  **(ii)** Research, replace or restore the lost information on damaged "valuable papers and records":

  to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f.** Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**h. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

  **(1)** The date of direct physical loss or damage; or

  **(2)** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

  **(1)** 3 consecutive weeks after the time of that action; or

  **(2)** When your Business Income coverage ends;

  whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

**j. Money Orders And Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

  **(1)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

  **(2)** Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k. Forgery And Alteration**

  **(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money", that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

  **(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money", on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

  **(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500.

**l. Increased Cost Of Construction**

  **(1)** This Additional Coverage applies only to buildings insured on a replacement cost basis.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **I.(3)** through **I.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **I.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

    **(a)** You were required to comply with before the loss, even when the building was undamaged; and

    **(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $5,000.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

    **(a)** We will not pay for the Increased Cost of Construction:

        **(i)** Until the property is actually repaired or replaced, at the same or another premises; and

        **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **(b)** If the building is repaired or replaced at the same premises, of if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

    **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **I.(6)** of this Additional Coverage, is not subject to such limitation.

**m. Exterior Building Glass**

**(1)** We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

    **(a)** Expenses incurred to put up temporary plates or board up openings;

    **(b)** Repair or replacement of encasing frames; and

    **(c)** Expenses incurred to remove or replace obstructions.

**(2)** Paragraph **A.3.**, **Covered Causes Of Loss** and Section **B., Exclusions** do not apply to this Additional Coverage, except for:

    **(a)** Paragraph **B.1.b.**, Earth Movement;

    **(b)** Paragraph **B.1.c.**, Governmental Action;

    **(c)** Paragraph **B.1.d.**, Nuclear Hazard;

    **(d)** Paragraph **B.1.f.**, War And Military Action; and

    **(e)** Paragraph **B.1.g.**, Water.

Copyright, Insurance Services Office, Inc., 1999

**(3)** We will not pay for loss or damage caused by or resulting from:

**(a)** Wear and tear;

**(b)** Hidden or latent defect;

**(c)** Corrosion; or

**(d)** Rust.

**(4)** The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Additional Coverage is the Tenant's Exterior Building Glass Limit of Insurance shown in the Declarations.

**6. Coverage Extensions**

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, unless a higher Limit of Insurance is shown in the Declarations.

**a. Personal Property At Newly Acquired Premises**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to that property at any premises you acquire.

The most we will pay for loss or damage under this Extension is $100,000 at each premises.

**(2)** Insurance under this Extension for each newly acquired premises will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire or begin construction at the new premises; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

**b. Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than "money" and "securities", "valuable papers and records" or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $5,000.

**c. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $2,500, but not more than $500 for any one tree, shrub or plant.

**d. Personal Effects**

You may extend the insurance that applies to Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees. This extension does not apply to:

**(1)** Tools or equipment used in your business; or

**(2)** Loss or damage by theft.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises.

**e. "Valuable Papers And Records"**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on "valuable papers and records" for which duplicates do not exist.

 Copyright, Insurance Services Office, Inc., 1999

**(2)** This Coverage Extension does not apply to:

**(a)** Property held as samples or for delivery after sale;

**(b)** Property in storage away from the premises shown in the Declarations.

**(3)** The most we will pay under this Coverage Extension for loss or damage to "valuable papers and records" in any one occurrence at the described premises is $5,000, unless a higher Limit of Insurance for "valuable papers and records" is shown in the Declarations.

For "valuable papers and records" not at the described premises, the most we will pay is $2,500.

**(4)** Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** The Accounts Receivable and "Valuable Papers And Records" Exclusions.

**f. Accounts Receivable**

**(1)** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $5,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $2,500.

**(3)** Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

**(a)** Paragraph **B.1.c.,** Governmental Action;

**(b)** Paragraph **B.1.d.,** Nuclear Hazard;

**(c)** Paragraph **B.1.f.,** War And Military Action;

**(d)** Paragraph **B.2.f.,** Dishonesty;

**(e)** Paragraph **B.2.g.,** False Pretense;

**(f)** Paragraph **B.3.;** and

**(g)** The Accounts Receivable and "Valuable Papers And Records" Exclusions.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(2)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust, or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows from a sewer, drain or sump; or

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings.

But if Water, as described in **B.1.g.(1)** through **B.1.g.(4)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**e. Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

**f. Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others;

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records", this exclusion does not apply to carriers for hire.

**g. False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**h. Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

**i. Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**j. Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**k. Other Types Of Loss**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **B.2.k.(1)** through **B.2.k.(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following **B.3.a.** through **B.3.c.** But if an excluded cause of loss that is listed in **B.3.a.** through **B.3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. **Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. **Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. **Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. **Business Income And Extra Expense Exclusions**

We will not pay for:

a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations", we will cover such loss that affects your Business Income during the "period of restoration".

b. Any other consequential loss.

5. **Accounts Receivable And "Valuable Papers And Records" Exclusions**

The following additional exclusions apply to the Accounts Receivable and "Valuable Papers And Records" Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(a) Programming errors or faulty machine instructions;

(b) Faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

b. Applicable to "Valuable Papers and Records" only:

We will not pay for loss or damage caused by or resulting from any of the following:

(1) Errors or omissions in processing or copying. But if errors or omissions in processing or copying result in fire or explosion, we will pay for the direct loss or damage caused by the fire or explosion.

(2) Wear and tear, gradual deterioration or latent defect.

**c.** Applicable to Accounts Receivable only:

We will not pay for:

**(1)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(2)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

**(3)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## C. Limits Of Insurance

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**2.** The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

**3.** The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

**4. Building Limit - Automatic Increase**

**a.** The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year of the effective date of the most recent policy change amending the Building limit, divided by 365.

Example:

If: The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

The amount of increase is $100,000 x .08 x 146 ÷ 365 = $3,200.

**5. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** The 12 months immediately preceding the date the loss or damage occurs; or

**(2)** The period of time you have been in business as of the date the loss or damage occurs.

## D. Deductibles

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

**2.** Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages and the Additional Coverage - Exterior Building Glass in any one occurrence is the Optional Coverage/Exterior Building Glass Deductible shown in the Declarations:

**a.** Money and Securities;

**b.** Employee Dishonesty;

**c.** Interior Glass; and

**d.** Outdoor Signs.

But this Optional Coverage/Exterior Building Glass Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

**3.** No deductible applies to the following Additional Coverages:

**a.** Fire Department Service Charge;

**b.** Business Income;

**c.** Extra Expense; and

**d.** Civil Authority.

**E. Property Loss Conditions**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

5. **Limitation - Electronic Media And Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** 60 consecutive days from the date of direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**(1)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(2)** Data stored on such media; or

**(3)** Programming records used for electronic data processing or electronically controlled equipment.

Example No. **1:**

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 - September 1. Loss during the period September 2 - October 1 is not covered.

Example No. **2:**

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 - September 29 (60 consecutive days). Loss during the period September 30 - October 15 is not covered.

6. **Loss Payment**

In the event of loss or damage covered by this policy:

**a.** At our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in **(2)** through **(8)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost without deduction for depreciation, subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** The Limit of Insurance under this policy that applies to the lost or damaged property;

**(ii)** The cost to replace, on the same premises, the lost or damaged property with other property:

**i.** Of comparable material and quality; and

**ii.** Used for the same purpose; or

**(iii)** The amount that you actually spend that is necessary to repair or replace the lost or damaged property.

Copyright, Insurance Services Office, Inc., 1999

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

  **(i)** The actual cash value of the lost or damaged property; or

  **(ii)** A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

  **(i)** Until the lost or damaged property is actually repaired or replaced; and

  **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the "Actual Cash Value - Buildings" option applies, as shown in the Declarations, Paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** The following property at actual cash value:

  **(a)** Used or second-hand merchandise held in storage or for sale;

  **(b)** Property of others, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

  **(c)** Household contents, except personal property in apartments or rooms furnished by you as landlord;

  **(d)** Manuscripts;

  **(e)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

**(4)** Glass at the cost of replacement with safety glazing material if required by law.

**(5)** Tenants′ Improvements and Betterments at:

  **(a)** Replacement cost if you make repairs promptly.

  **(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    **(i)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **(ii)** Divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

  **(c)** Nothing if others pay for repairs or replacement.

Copyright, Insurance Services Office, Inc., 1999

**(6)** "Valuable papers and records", including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

**(a)** Blank materials for reproducing the records; and

**(b)** Labor to transcribe or copy the records.

This condition does not apply to "valuable papers and records" that are actually replaced or restored.

**(7)** Applicable only to the Optional Coverages:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**(8)** Applicable only to Accounts Receivable:

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

**(i)** We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(ii)** We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(i)** The amount of the accounts for which there is no loss or damage;

**(ii)** The amount of the accounts that you are able to re-establish or collect;

**(iii)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(iv)** All unearned interest and service charges.

**e.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners´ property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**8. Resumption Of Operations**

We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

9. **Vacancy**

   a. **Description Of Terms**

   (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

   (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   (b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

   (i) Is not rented; or

   (ii) Is not used to conduct customary operations.

   (2) Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

   (a) Vandalism;

   (b) Sprinkler leakage, unless you have protected the system against freezing;

   (c) Building glass breakage;

   (d) Water damage;

   (e) Theft; or

   (f) Attempted theft.

   (2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

F. **Property General Conditions**

   1. **Control Of Property**

   Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

   2. **Mortgageholders**

   a. The term "mortgageholder" includes trustee.

   b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   (1) Pays any premium due under this policy at our request if you have failed to do so;

   (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this policy will then apply directly to the mortgageholder.

   e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

   (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

**a.** We cover loss or damage commencing:

**(1)** During the policy period shown in the Declarations; and

**(2)** Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** The United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

**1. Outdoor Signs**

**a.** We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

**(1)** Owned by you; or

**(2)** Owned by others but in your care, custody or control.

**b.** Paragraph **A.3.**, **Covered Causes Of Loss,** and Section **B., Exclusions,** do not apply to this Optional Coverage, except for:

**(1)** Paragraph **B.1.c.,** Governmental Action;

**(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

**(3)** Paragraph **B.1.f.,** War And Military Action.

**c.** We will not pay for loss or damage caused by or resulting from:

**(1)** Wear and tear;

**(2)** Hidden or latent defect;

**(3)** Rust;

**(4)** Corrosion; or

**(5)** Mechanical breakdown.

**d.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

**e.** The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

**2. Interior Glass**

**a.** We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

**(1)** Described in the Declarations as covered under this Optional Coverage; and

**(2)** Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

**(3)** Owned by you, or owned by others but in your care, custody or control.

**b.** We will also pay for necessary:

   **(1)** Expenses incurred to put up temporary plates or board up openings;

   **(2)** Repair or replacement of encasing frames; and

   **(3)** Expenses incurred to remove or replace obstructions.

**c.** Paragraph **A.3.**, **Covered Causes Of Loss,** and Section **B., Exclusions,** do not apply to this Optional Coverage, except for:

   **(1)** Paragraph **B.1.c.,** Governmental Action;

   **(2)** Paragraph **B.1.d.,** Nuclear Hazard; and

   **(3)** Paragraph **B.1.f.,** War And Military Action.

**d.** We will not pay for loss or damage caused by or resulting from:

   **(1)** Wear and tear;

   **(2)** Hidden or latent defect;

   **(3)** Corrosion; or

   **(4)** Rust.

**e.** This Optional Coverage supersedes all limitations in this policy that apply to interior glass.

**3. Money And Securities**

**a.** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

   **(1)** Theft, meaning any act of stealing;

   **(2)** Disappearance; or

   **(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

   **(1)** Resulting from accounting or arithmetical errors or omissions;

   **(2)** Due to the giving or surrendering of property in any exchange or purchase; or

**(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

   **(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

      **(a)** In or on the described premises; or

      **(b)** Within a bank or savings institution; and

   **(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

   **(1)** Caused by one or more persons; or

   **(2)** Involving a single act or series of related acts;

   is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**4. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

   **(1)** Cause you to sustain loss or damage; and also

   **(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

      **(a)** Any employee; or

      **(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

   **(1)** Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

   Copyright, Insurance Services Office, Inc., 1999

(2) The only proof of which as to its existence or amount is:

    (a) An inventory computation; or

    (b) A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

    (1) Caused by one or more persons; or

    (2) Involving a single act or series of related acts;

    is considered one occurrence.

**e.** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage does not apply to any employee immediately upon discovery by:

    (1) You; or

    (2) Any of your partners, officers or directors not in collusion with the employee;

    of any dishonest act committed by that employee before or after being hired by you.

**g.** We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

**h.** If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

    (1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

    (2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**i.** The insurance under Paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

    (1) This Optional Coverage as of its effective date; or

    (2) The prior insurance had it remained in effect.

**5. Mechanical Breakdown**

**a.** We will pay for direct damage to Covered Property caused by an Accident to an Object. The Object must be:

    (1) Owned by you or in your care, custody or control; and

    (2) At the described premises.

**b.** Accident means a sudden and accidental breakdown of the Object or a part of the Object. At the time the breakdown occurs, it must manifest itself by physical damage to the Object that necessitates repair or replacement.

**c.** None of the following is an Accident:

    (1) Depletion, deterioration, corrosion or erosion;

    (2) Wear and tear;

    (3) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

    (4) Breakdown of any vacuum tube, gas tube or brush;

    (5) Breakdown of any electronic computer or electronic data processing equipment;

    (6) Breakdown of any structure or foundation supporting the Object or any of its parts;

    (7) The functioning of any safety or protective device; or

    (8) The explosion of gases or fuel within the furnace of any Object or within the flues or passages through which the gases of combustion pass.

**d.** Object means any of the following equipment:

    (1) Boiler and Pressure Vessels:

        (a) Steam heating boilers and condensate return tanks used with them;

**(b)** Hot water heating boilers and expansion tanks used with them;

**(c)** Hot water supply boilers;

**(d)** Other fired or unfired vessels used for maintenance or service of the described premises but not used for processing or manufacturing;

**(e)** Steam boiler piping, valves, fittings, traps and separators, but only if they:

  **(i)** Are on your premises or between parts of your premises;

  **(ii)** Contain steam or condensate of steam; and

  **(iii)** Are not part of any other vessel or apparatus;

**(f)** Feed water piping between any steam boiler and a feed pump or injector.

**(2)** Air Conditioning Units - Any air conditioning unit that has a capacity of 60,000 Btu or more, including:

**(a)** Inductors, convectors and coils that make use of a refrigerant and form part of a cooling, humidity control or space heating system;

**(b)** Interconnecting piping, valves and fittings containing only a refrigerant, water, brine or other solution;

**(c)** Vessels heated directly or indirectly that:

  **(i)** Form part of an absorption type system; and

  **(ii)** Function as a generator, regenerator or concentrator;

**(d)** Compressors, pumps, fans and blowers used solely with the system together with their driving electric motors; and

**(e)** Control equipment used solely with the system.

**e.** Object does not mean:

**(1)** As Boiler and Pressure Vessels:

**(a)** Equipment that is not under internal vacuum or internal pressure other than weight of contents;

**(b)** Boiler settings;

**(c)** Insulating or refractory material; or

**(d)** Electrical, reciprocating or rotating apparatus within or forming a part of the boiler or vessel.

**(2)** As Air Conditioning Units, any:

**(a)** Vessel, cooling tower, reservoir or other source of cooling water for a condenser or compressor, or any water piping leading to or from that source; or

**(b)** Wiring or piping leading to or from the unit.

**f.** We will not pay for an Accident to any Object while being tested.

**g. Suspension**

Whenever an Object is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an Accident to that Object. This can be done by delivering or mailing a written notice of suspension to:

**(1)** Your last known address; or

**(2)** The address where the Object is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**H. Property Definitions**

**1.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**2.** "Operations" means your business activities occurring at the described premises.

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and
d

**b.** Ends on the earlier of:

   **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

   **(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

   **(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

   **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

  **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

  **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**6.** "Specified Causes of Loss" means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

  **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

  **b.** Falling objects does not include loss of or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

  **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**7.** "Valuable papers and records" means inscribed, printed, or written:

  **a.** Documents;

  **b.** Manuscripts; and

  **c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean:

  **d.** "Money" or "Securities";

  **e.** Converted Data;

  **f.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.



**J6353**
**1st Edition**

## CHANGE TO LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM
APARTMENT OWNERS LIABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM

The following provision replaces **D.1.**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;
   **b.** Claims made or "suits" brought;
   **c.** Persons or organizations making "claims" or bringing "suits"; or
   **d.** Policies involved.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

93-6353  1ST EDITION  11-07
J6353-ED1

J6353101  PAGE 1 OF 1



**FARMERS**

**INSURANCE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**NO COVERAGE FOR CERTAIN COMPUTER-RELATED LOSSES**

**E3027**

**1st Edition**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS STANDARD PROPERTY COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS STANDARD FORM COMPUTER COVERAGE
BUSINESSOWNERS SPECIAL FORM COMPUTER COVERAGE
BUSINESSOWNERS LIABILITY COVERAGE FORM
STANDARD PROPERTY POLICY
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
BUSINESS AUTO COVERAGE FORM
EQUIPMENT BREAKDOWN COVERAGE FORM
GARAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will not pay for loss or damage to any property, loss of use of any property, Extra Expense or loss of Business Income caused directly or indirectly by:

**1.** The failure or malfunction of:

   **a.** Any of the following, whether belonging to you or to others:

     **(1)** computer hardware;
     **(2)** computer software;
     **(3)** computer operating systems;
     **(4)** computer networks;
     **(5)** microprocessors (computer chips);
     **(6)** any other computerized or electronic equipment or components;
     **(7)** any electronic data processing equipment, computer programs and software; or

   **b.** Any other products or services that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph **1.a.** of this endorsement

   due to the inability of those products or services described in paragraphs **1.a.** and **1.b.** to correctly recognize, distinguish, interpret, accept or process any encoded, abbreviated or encrypted date(s) or times(s).

**2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by you or for you to determine, rectify or test any potential or actual failure, malfunction or inadequacy described in paragraph **A.1.** above.

However, if an excluded Cause of Loss results in:

**1.** a "Specified Cause of Loss" (such as fire) under the Causes of Loss - Special Form; or

**2.** a Covered Cause of Loss (such as fire) under the Causes of Loss - Basic Form or Broad Form;

we will pay only for the loss or damage caused by such "Specified Cause of Loss" or Covered Cause of Loss.

**B.** We will not pay for "bodily injury", "property damage", "personal injury" or "advertising injury" for which any insured may be held liable by reason of:

   **1.** The failure or malfunction of any of the items listed in paragraph **A.1.a.** of this endorsement; or

   **2.** Any products or services that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph **A.1.a.** of this endorsement

   due to the inability of those products or services described in paragraphs **1.** and **2.** above to correctly recognize, distinguish, interpret, accept or process any date(s) or times(s).

**C.** We will not pay for repair or modification of any part of an electronic data processing system, or its related equipment, to correct deficiencies or features of logic or operation.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Includes Copyright Material Insurance Services Office, Inc., 1998

BUSINESSOWNERS
BP 04 60 01 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION WASHINGTON

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

The following exclusion is added to Section **B. Exclusions** of the Businessowners Liability Coverage Form:

This insurance does not apply to:

1. "Bodily injury" or "personal injury" to:

   a. A person arising out of any:

      (1) Refusal to employ that person;

      (2) Termination of that person's employment; or

      (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   b. The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)** or **(3)** above is directed.

   This exclusion applies:

   a. Whether the insured may be liable as an employer or in any other capacity; and

   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs **(1)(a)** and **(b)** of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

              Copyright, Insurance Services Office, Inc.,  1996                   □

BUSINESSOWNERS
BP 05 14 01 03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following provisions are added to the Businessowners Liability Coverage Form **BP 00 06** and **Section II Liability** of the Businessowners Coverage Form **BP 00 03:**

**A.** Exclusion **i.** under Paragraph **B.1., Exclusions Applicable To Business Liability Coverage** is replaced by the following:

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**i. War**

"Bodily injury", "property damage", "personal injury", "advertising injury" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** Exclusion **h.** under Paragraph **B.2. Exclusions Applicable To Medical Expenses Coverage** does not apply. Medical Expenses due to war are now subject to Exclusion **g.** of Paragraph **B.2.** since "bodily injury" arising out of war is now excluded under Paragraph **B.1., Exclusions    Applicable To Business Liability Coverage.**

 © ISO Properties, Inc.,  2003

POLICY NUMBER:  **60484-23-20**                                      BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESSOWNERS SPECIAL FORM COMPUTER COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

**SCHEDULE***

| Electronic Data Processing Equipment | | LIMITS OF INSURANCE |
|---|---|---|
| **Prem.** | **Bldg.** | |
| **No.** | **No.** | |
| 001 | 001 | $ ___10,000/OCCURRENCE___ |
| | | $ _____ |
| | | $ _____ |

The Limit of Insurance for Electronic Media and Records is 25% of the Limit of Insurance shown for Electronic Data Processing Equipment unless a higher Limit of Insurance for Electronic Media and Records is shown below.

| Electronic Data Processing Media And Records | | LIMITS OF INSURANCE |
|---|---|---|
| **Prem.** | **Bldg.** | |
| **No.** | **No.** | |
| 001 | 001 | $ _____ |
| | | $ _____ |
| | | $ _____ |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The coverage provided by this endorsement is subject to the provisions applicable to the Businessowners Special Property Coverage Form attached to this policy, including the deductible provisions, except as otherwise provided within this endorsement.

The following provisions (**A.** through **H.** inclusive) apply only to the coverage provided by this endorsement:

**A.** Paragraph **A.1.b. Business Personal Property** is replaced by the following:

    **b. Business Personal Property**

        Covered Property as used in this endorsement includes the following types of property that you own that are used in your business; and property of others as defined below, that is in your care, custody or control, except as otherwise provided in Loss Payment Property Loss Condition **E.6.d.(3)(b).**

    **(1) Electronic Data Processing Equipment (Hardware)**

        As used in this endorsement, Electronic Data Processing Equipment includes:

    **(a)** Programmable electronic equipment that is used to store, retrieve and process data; and

    **(b)** Associated peripheral equipment that provides communication including input and output functions such as printing, or auxiliary functions such as data transmission;

    except as described in **(2)** below.

POLICY NUMBER:  **60484-23-20**                                           BUSINESSOWNERS

**(2) Electronic Media And Records (Including Software)**

As used in this endorsement, Electronic Media and Records includes:

**(a)** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**(b)** Data stored on such media; and

**(c)** Programming records used for electronic data processing or electronically controlled equipment.

**B.** The following is added to Paragraph **A.2. Property Not Covered:**

**g.** Property held as samples, held for rental or sale or that you rent to others;

**h.** Property in storage away from the premises shown in the Declarations or in the Schedule, except as provided in the Coverage Extensions of this endorsement;

**i.** Electronic data processing equipment which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration; or

**j.** Accounts, bills, evidences of debt and valuable papers and records. However, such property is Covered Property in its "converted data" form.

**C.** Under **A.4. Limitations,** Paragraphs **a.(1)** and **(2)** do not apply.

**D.** Under **A.6.** Coverage Extensions in the Businessowners Special Property Coverage Form:

**1.** Under the Personal Property at Newly Acquired Premises Coverage Extension **6.a.,** insurance under this Extension for Covered Property will end when any of the following first occurs:

**a.** This policy expires;

**b.** 30 days expire after you acquire new premises or begin construction at the new premises;

**c.** Specific insurance for the Covered Property at the newly acquired premises is obtained; or

**d.** You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

**2.** Coverage Extension **6.b. Personal Property Off Premises** applies to Covered Property:

**(a)** While such property is in the course of transit or is located at a premises you do not own, lease or operate for not more than 90 days.

**(b)** Including duplicate or back-up electronic media and records that are stored at a separate location which is at least 100 feet from the premises described in the Schedule or Declarations as applying to electronic media and records.

**3.** The following are added to **A.6. Coverage Extensions:**

**e. Mechanical Breakdown Of Electronic Data Processing Equipment**

We will pay for loss or damage to Covered Property due to mechanical breakdown if such loss or damage exceeds in any one occurrence the applicable deductible shown in the Declarations.

We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance for the Covered Property.

This Coverage Extension is included within the Limit of Insurance applying to Electronic Data Processing Equipment at the described premises.

**f. Artificially Generated Electrical Current**

We will pay for loss or damage to Electronic Data Processing Equipment due to artificially generated electrical current if such loss or damage is caused by or results from:

**(1)** An occurrence that took place within 100 feet of the described premises; or

**(2)** Interruption of electric power supply, power surge, blackout or brownout if the cause of such occurrence took place within 100 feet of the described premises.

Copyright, Insurance Services Office, Inc., 1997          BP 04 34 01 97          □

POLICY NUMBER:  60484-23-20

BUSINESSOWNERS

If such loss or damage as specified above, exceeds in any one occurrence the applicable deductible shown in the Declarations, we will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance for the Equipment.

This Coverage Extension is included within the Limit of Insurance applying to Electronic Data Processing Equipment at the described Location.

The Electrical Apparatus Exclusion **B.2.a.** in the Businessowners Special Property Coverage Form does not apply to this Coverage Extension.

**E.** The following is added to Paragraph **B. Exclusions** in the Businessowners Special Property Coverage Form:

   **1.** The following exclusions do not apply to coverage provided under this endorsement:

   **B.1.e.** Power Failure, **B.2.c.** Smoke, **B.2.d.** Steam Apparatus, **B.2.i.** Collapse, **B.2.k.(3), (4)** and **(5)** Other Types Of Loss exclusions and **B.3.b.** Acts Or Decisions.

   **2.** Exclusion **B.2.k.(7)** is replaced by the following:

      **(a)** Dampness or dryness of atmosphere, or changes in or extremes of temperature, unless such conditions result from physical damage caused by a covered cause of loss to an air conditioning unit or system, including equipment and parts, which is part of, or used with the electronic data processing equipment.

      **(b)** Marring or scratching:

         But if an excluded cause of loss that is listed in **B.2.k.(1), (2), (6)** or **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**F. Additional Exclusions**

The following exclusions apply in addition to the exclusions listed under **B. Exclusions** in the Businessowners Special Property Coverage Form.

We will not pay for loss or damage caused by or resulting from any of the following:

   **1.** Human errors or omissions in processing, recording or storing information on electronic media and records and electronic data processing equipment.

   But we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss would be covered by this endorsement.

   **2.** Electrical or magnetic injury, disturbance or erasure of electronic recordings, except as provided for under the Coverage Extensions of this endorsement.

   But we will pay for direct loss or damage caused by lightning.

   **3.** Failure, breakdown or malfunction of electronic media and records and electronic data processing equipment, including parts, while the media is being run through the equipment.

   But, we will pay for direct loss or damage caused by resulting fire or explosion if these causes of loss are covered by this endorsement.

   **4.** Installation, testing, repair or other similar service performed upon the electronic data processing media and records or electronic data processing equipment, including parts.

**G. Property Loss Conditions**

Paragraph **d.(6)** of the **Loss Payment** Property Loss Condition does not apply to electronic media and records that are actually replaced or restored.

**H.** The following is added to **H. Property Definitions:**

   **7.** "Converted data" means information that is stored on electronic media, that is capable of being communicated, processed or interpreted by electronic data processing equipment.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

**E3451**
**1st Edition**

## RETAIL/SERVICE PRIMARY PACKAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM BP 00 02

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A.** The following coverages are added to **5. Additional Coverages** under **A. Coverage:**

**n. Arson Conviction Reward**

**(1)** We will pay an arson conviction reward to a person or persons (not to include the Named Insured or any person responsible in any way for the subject fire) providing information which leads to an arson conviction in connection with a fire loss or damage covered by this policy.

**(2)** The amount of the reward will be equal to the amount of the covered loss; however, in no event will the amount of the reward exceed $5,000 for any one fire occurrence.

**(3)** The reward applies per fire occurrence regardless of the number of persons providing information

No deductible applies to this Additional Coverage.

**o. Fire Extinguisher Recharge Expense**

We will pay up to $2,500 per occurrence for the necessary costs to recharge or replace (whichever is less) fire extinguishers owned by you that are discharged as a result of extinguishing a covered fire which occurs at the premises described in the Declarations.

No deductible applies to this **Additional Coverage.**

**B.** The following Extension is added to **A. Coverage, 6. Coverage Extensions:**

**g. Newly Acquired Or Constructed Property**

**(1)** You may extend the insurance that applies to Building(s) to apply to:

**(a)** Your new building(s) while being constructed on the described premises; and

**(b)** Building(s) you acquire at locations, other than at the described premises, intended for:

**(i)** Similar use as a building described in the Declarations;

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is the lesser of the amount of covered loss under the terms of the policy, or $250,000 for each covered building.

**(2)** Coverage under this Extension for each newly acquired or constructed building will end upon the first to occur of the following:

**(a)** This policy expires or is terminated;

**(b)** The thirtieth day after you acquire or begin to construct the building; or

**(c)** You request that the subject building be covered under the policy.

We will charge you an additional premium from the date construction begins or you acquire the property.

The deductible applicable to and shown in the Declarations for Building(s) applies to each loss under this Extension.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



**FARMERS**
INSURANCE

E**6289**
**1st Edition**

Policy Number: _____ 60484-23-20 _____          Effective Date: _____ 09/15/15 _____

## BUSINESS INCOME AND EXTRA EXPENSE - 18 MONTHS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM

The provisions of the applicable Coverage Form apply unless modified by this endorsement.

**A.** The Businessowners Special Property Coverage Form  BP 00 02, or Section I - Property of the Businessowners Coverage Form  BP 00 03 is amended as follows:

   1. Item **A.5.f.(1) Business Income** is amended as follows:

   The maximum period for which we will pay for loss of Business Income that you sustain during the "period of restoration" is  18 consecutive months after the date of direct physical loss or    damage.

   2. Item **A.5.g.(2) Extra Expense**, is amended as follows:

   We will only pay for Extra Expense that occurs within 18 consecutive months after the date of direct physical loss or damage.

**B.** The Apartment Owners Property Coverage Form   E3424 is amended as follows:

   1. Item **A.5.e.(1) Business Income** is amended as follows:

   The maximum period for which we will pay for loss of Business Income that you sustain during the "period of restoration" is  18 consecutive months after the date of direct physical loss or    damage.

   2. Item **A.5.f.(2) Extra Expense**, is amended as follows:

   We will only pay for Extra Expense that occurs within 18 consecutive months after the date of direct physical loss or damage.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-6289 1ST EDITION  12-07
E6289-ED1

E6289101  Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



**w7939**
**WASHINGTON**
**2nd Edition**

## WASHINGTON - AMENDMENT OF
## TERRORISM EXCLUSIONS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS LIABILITY COVERAGE FORM
APARTMENT OWNERS PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

**A.** The following provision is added to the applicable Property and Liability Coverage Forms:

**1.** If this policy (or an endorsement to this policy) excludes loss or damage caused by a "certified act of terrorism", an "other act of terrorism", or "terrorism", the following paragraph is added to such exclusion(s) and supersedes any provision to the contrary.

Loss or damage will be considered to have been caused by such excluded event if the occurrence of that event:

**a.** Directly and solely results in loss or damage; or

**b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**B.** The following provision is added to **Section I – Property and Section II – Liability** of the Businessowners Coverage Form:

**1.** If this policy (or an endorsement to this policy) excludes loss or damage caused by a "certified act of terrorism", an "other act of terrorism", or "terrorism", the following paragraph is added to such exclusion(s) and supersedes any provision to the contrary.

Loss or damage will be considered to have been caused by such excluded event if the occurrence of that event:

**a.** Directly and solely results in loss or damage; or

**b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

# BUSINESSOWNERS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we","us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F** - Liability And Medical Expenses Definitions.

## A. Coverages

### 1. Business Liability

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury," or "advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **D** - Liability And Medical Expenses Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

**(b)** The "bodily injury" or "property damage" occurs during the policy period.

**(2)** To:

**(a)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(b)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**d. Coverage Extension - Supplementary Payments**

In addition to the Limit of Insurance we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(1)** All expenses we incur.

**(2)** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

Copyright, Insurance Services Office, Inc., 1997

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the insured in the "suit".

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee:

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **B.1.b.(2)** of Exclusions, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above are no longer met.

   Copyright, Insurance Services Office, Inc., 1997

**2. Medical Expenses**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**B. Exclusions**

**1. Applicable To Business Liability Coverage**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily Injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

    **(a)** Whether the insured may be liable as an employer or in any other capacity; and

    **(b)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

        **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

Copyright, Insurance Services Office, Inc., 1997       □

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

    **(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Professional Services**

"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services; and

(9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products - completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products - completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal Or Advertising Injury**

"Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

Copyright, Insurance Services Office, Inc., 1997

**(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

**(4)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

**(5)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(6)** With respect to any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**q. Advertising Injury**

"Advertising injury" arising out of:

**(1)** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

**(2)** The failure of goods, products or services to conform with advertised quality or performance;

**(3)** The wrong description of the price of goods, products or services; or

**(4)** An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** do not apply to damage by fire or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section **D.**, Limits of Insurance.

**2. Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products - completed operations hazard".

**g.** Excluded under Business Liability Coverage.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**3. Applicable To Both Business Liability Coverage And Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if:

  **(1)** The "nuclear material":

    (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    (b) Has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Byproduct material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for:

  **(1)** Separating the isotopes of uranium or plutonium;

  **(2)** Processing or utilizing "spent fuel"; or

  **(3)** Handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

"Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

Copyright, Insurance Services Office, Inc., 1997

"Waste" means any waste material:

**(a)** Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

**C. Who Is An Insured**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in Paragraphs **(1)(a)** or **(1)(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing or failing to provide professional health care services; or

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

**a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "Personal injury" and "advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion is the Fire Legal Liability limit shown in the Declarations.

**4. Aggregate Limits**

The most we will pay for:

**a.** Injury or damage under the "products - completed operations hazard" arising from all "occurrences" during the policy period is the Liability and Medical Expenses limit; and

**b.** All other injury or damage, including medical expenses, arising from all "occurrences" during the policy period is twice the Liability and Medical Expenses limit. This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire or explosion.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. Liability And Medical Expenses General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

  **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

  **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

  **c.** All parts of the world if:

    **(1)** The injury or damage arises out of:

      **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

      **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

    **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

  **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

  **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

  **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

  **(2)** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

  **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

  **b.** A sidetrack agreement;

  **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **e.** An elevator maintenance agreement;

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

  Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

    **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

Copyright, Insurance Services Office, Inc., 1997

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products - completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** "Your work" means:

  **a.** Work or operations performed by you or on your behalf; and

  **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

  **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

  **b.** The providing of or failure to provide warnings or instructions.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

 **FARMERS** INSURANCE

E**6285**
**1st Edition**

# LIMITATION OF COVERAGE
# REAL ESTATE AND PROPERTY MANAGEMENT
# OPERATIONS

This endorsement modifies insurance provided under the following:

**BUSINESOWNERS LIABILITY COVERAGE FORM**

This insurance applies only to "bodily injury", "property damage", "personal injury" and "advertising injury" arising out of the ownership, operation, maintenance or use of:

**A. Real Estate Agents**

1. Such part of any premises you use for general office purposes; and

2. Premises listed with you for sale or rental, if:

   **a.** You do not own or operate the premises;
   **b.** They are not in your care, custody, or control; or
   **c.** You do not act as agent or in any supervisory capacity for the collection of rents.

**B. Property Managers**

1. Such part of any premises you use for general office purposes; and

2. Premises you manage in your capacity as a property manager, however, liability arising out of such activities will be excess over any valid and collectible insurance available to you.

**C.** The following is added to Section **B. EXCLUSIONS:**

This policy does not apply to bodily injury," "property damage", "personal injury" and "advertising injury" arising out of any coverage for:

**1.** Construction, Contracting and/or Development Operations;

**2.** Subcontracting Operations;

**3.** Developed or Undeveloped Vacant Land;

**4.** Misrepresentations, errors or omissions by you or any real estate agent or brokers who are either employed by you or performing work on your behalf.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

POLICY NUMBER:  **60484‑23‑20**

BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS LIABILITY COVERAGE -
# TENANTS LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**SCHEDULE\***

**Premises: ALL DESCRIBED LOCATIONS**

**Tenants Liability Limit Of Insurance (Per Occurrence):**

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

With respect to the coverage provided under this endorsement, the Businessowners Liability Coverage Form is amended as follows:

**A.** The final paragraph of **B.1. Exclusions - Applicable To Business Liability Coverage** of the Businessowners Liability Coverage Form is deleted and replaced by the following:

With respect to the premises shown in the Schedule of this endorsement which are rented to you or temporarily occupied by you with the permission of the owner, Exclusions **c., d., e., g., h., k., l., m., n.** and **o.** do not apply to "property damage".

**B.** Paragraph **D.2. Liability And Medical Expenses Limits Of Insurance** is deleted and replaced by the following:

The most we will pay under this endorsement for the sum of all damages because of all "property damage" arising out of any one "occurrence" to premises rented to you or temporarily occupied by you with the permission of the owner is the Tenants Liability Limit of Insurance shown in the Schedule.

**C.** With respect to the premises shown in the Schedule of this endorsement, Paragraph **D.3.** and Paragraph **D.4.b.** are deleted.

Copyright, Insurance Services Office, Inc., 1997

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**E3342**
**1st Edition**

## PERSONAL AND ADVERTISING INJURY COVERAGE
## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Businessowners Liability Coverage Form apply unless modified by the endorsement.

**A. Coverages**

**1.** Item **1. Business Liability** is amended as follows:

**a.** The words ″personal injury″ or advertising injury″ in item **1.a.** are changed to read ″personal and advertising injury″.

**b.** Items **1.b. (2)(a)** and **(b)** are deleted and replaced with the following:

**(2)** This insurance applies to ″personal and advertising injury″ caused by an offense arising out of your business, but only if the offense was committed in the ″coverage territory″ during the policy period.

**B. Exclusions**

Exclusions **p. Personal Or Advertising Injury** and **q. Advertising Injury** are deleted and replaced with the following:

**p. Personal And Advertising Injury**

**(1)** This insurance does not apply to ″personal and advertising injury″:

**(a)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict ″personal and advertising injury″;

**(b)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(c)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(d)** Arising out of any criminal act committed by or at the direction of any insured;

**(e)** For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(f)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your ″advertisement″;

**(g)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your ″advertisement″;

**(h)** Arising out of the wrong description of the price of goods, products or services stated in your ″advertisement″;

**(i)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **13. a., b.** and **c.** of ″personal and advertising injury″ under **F. Liability And Medical Expenses Definitions.**

**(j)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of ″pollutants″ at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, ″pollutants″; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, ″pollutants″.

**C.** Definitions **1.** ″Advertising Injury″ and **13.** ″Personal Injury″ in Section **F. Liability And Medical Expense Definitions** are deleted and replaced with:

**1.** ″Advertisement″ means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products of services;

**e.** Oral or written publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisements"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

 **FARMERS** INSURANCE

**J6316**
**1st Edition**

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
APARTMENT OWNERS PROPERTY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under **Section A - Coverage** in all applicable coverage forms and endorsements that comprise this policy, except as provided in Paragraph **C.** This includes but is not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** However, the exclusion in Paragraph **B.** does not apply to the following:

   **1.** Loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage may be addressed in a separate exclusion in this policy; or

   **2.** Coverage otherwise provided under Food Borne Illness Business Interruption Coverage **E3032** (if that endorsement is attached to this policy); or

   **3.** Coverage otherwise provided under the Restaurant Food Contamination Shutdown Coverage **E3419** (if that endorsement is attached to this policy).

**D.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**E.** If the following provisions are part of this policy, they are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungi", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**F.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this policy.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**BUSINESSOWNERS**
**BP 04 39 01 96**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

- **(a)** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
- **(b)** The negligent:

  - **(i)** Employment;
  - **(ii)** Investigation;
  - **(iii)** Supervision;
  - **(iv)** Reporting to the proper authorities, or failure to so report; or
  - **(v)** Retention;

  of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **(a)** above.

 Copyright, Insurance Services Office, Inc., 1996 □

**E 6036**
**1st Edition**

## LEAD POISONING AND CONTAMINATION EXCLUSION

When this endorsement is attached to your policy the following provisions apply to the Property and Liability Coverages of your policy:

1. This insurance does not apply to any **bodily injury, personal injury** or **property damage** or property loss arising out of, resulting from, caused by or contributed to by lead, or any hazardous properties of lead, including but not limited to Lead Poisoning and Lead Contamination and the threat or fear of Lead Poisoning or Lead Contamination.

   Lead Poisoning includes, but is not limited to, actual **bodily injury** or **personal injury** resulting from exposure or ingestation, of any nature, cause or duration, to or of lead, or products, objects or substances comprised of or containing lead.
   Lead Contamination includes, but is not limited to, the presence of lead in paint, soil, plants, animals, water pipes, buildings or other structures.

   For purposes of this exclusion, the definition of **bodily injury** is amended to include mental injury, anguish, distress or fear of Lead Poisoning or Lead Contamination.

   For purposes of this exclusion, the definitions of **property damage** and property loss are amended to include actual or threatened loss of property value, loss of equity, loss of use, loss of rents or other economic injury caused by Lead Poisoning or Lead Contamination .

2. We will not pay for any loss, cost or expense arising out of, resulting from, caused by or contributed to by:

   a. The testing or monitoring for, or, abatement, mitigation, neutralization, removal or disposal of lead, lead compounds or materials containing lead;

   b. The testing or monitoring for or treatment of Lead Poisoning or Lead Contamination in humans or animals.

   c. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with Lead Poisoning or Lead Contamination;

   d. Any obligation to share damages with or repay someone else who must pay damages in connection with Lead Poisoning or Lead Contamination.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FARMERS** INSURANCE

**J6828**
**1st Edition**

## LIMITED COVERAGE FOR FUNGI, WET ROT, DRY ROT AND BACTERIA

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM

**A.** The following is added under **B.1. Exclusions** as item **h.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **i.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

**"Fungi", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria.

But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

(1) When "fungi", wet or dry rot or bacteria results from fire or lightning; or

(2) To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**B.** Paragraph **B.2.k.(2)** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **B.2.l.(2)** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM is replaced by the following:

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**C.** The following is added under **B.2.k.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **B.2.l.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

(8) Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**D.** Paragraph **A.5.l.(5)** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and paragraph **A.5.l.(5)** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM is replaced by the following:

(5) Under this Additional Coverage, we will not pay any costs associated with:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

(b) The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**E.** The following is added under Section **A.5. Additional Coverages** as item **n.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **p.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

93-6828 1ST EDITION 3-10
J6828-ED1

Includes Copyrighted Material of Insurance Services Office, Inc. with its permission.

J6828I01 Page 1 of 2

**Limited Coverage For "Fungi", Wet Rot, Dry Rot And Bacteria**

If "fungi", wet or dry rot or bacteria results from a "specified cause of loss" (other than fire or lightning) that occurs during the policy period, and if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

(1) We will pay for loss or damage by "fungi", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    (a) Direct physical loss or damage to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

    (b) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

    (c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided it is reasonable to believe that "fungi", wet or dry rot or bacteria are present.

(2) The most we will pay under this Limited Coverage for the sum of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) which take place in each 12 month period (beginning with the effective date of this policy), is $15,000. The $15,000 aggregate limit is subject to and not in addition to the applicable Limit of Insurance on the affected property and is applied regardless of the number of premises involved in such occurrence(s).

(3) We will not pay more than the total of $15,000 under this Limited Coverage even if the "fungi", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

(4) Payments under this Limited Coverage are subject to and not in addition to the applicable Limit of Insurance on any Covered Property.

(5) If there is covered loss or damage to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(6) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Additional Coverages **5.d. Collapse** or **5.e. Water Damage, Other Liquids, Powder or Molten Material Damage**.

(7) This Limited Coverage applies if a Limit of Insurance is shown in the Declarations for Building or Personal Property.

(8) The following applies only if Business Income and Extra Expense coverage applies to the described premises and only if the suspension of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage.

    (a) If the loss which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a suspension of "operations", but such suspension is necessary due to loss or damage to property caused by "fungi", wet or dry rot or bacteria, we will pay for the actual loss of business income and extra expense you sustain. However, we will only pay for loss of business income and extra expense sustained in a period of not more than 30 days. The days need not be consecutive.

    (b) If a covered suspension of "operations" was caused by loss or damage other than "fungi", wet or dry rot or bacteria, but remediation of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for the actual loss of business income and extra expense you sustain during the delay (regardless of when such a delay occurs during the "period of restoration") but such coverage is limited to 30 days. The days need not be consecutive.

**G.** The following is added under Section **H. Property Definitions** as item **8.** in the BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM and item **14.** in Section I - PROPERTY of the BUSINESSOWNERS COVERAGE FORM:

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**J6849**
**2nd Edition**

## DEDUCTIBLE PROVISIONS

This endorsement modifies insurance provided under the following:

APARTMENT OWNERS PROPERTY COVERAGE FORM
BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
CONDOMINIUM PROPERTY COVERAGE FORM

The Deductible provisions in the applicable coverage form are amended as follows.

Section **D. Deductibles** in the applicable Property Coverage Form, and Paragraph **D. Deductibles** in **SECTION I - PROPERTY** of the Businessowners Coverage Form is deleted and replaced by the following:

## D.  DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. If more than one Deductible applies in any one occurrence we will apply each Deductible separately per location. But the total of all Deductible amounts applied in that occurrence will not exceed the highest applicable Deductible per location.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

# BUSINESSOWNERS COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy.

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

         Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a covered cause of loss, permanent repairs to the building:

         (a) Have not started, and

         (b) Have not been contracted for,

         within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Copyright, Insurance Services Office, Inc., 1997

**C. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This policy;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

We have the right but are not obligated to:

**1.** Make inspections and surveys at any time;

**2.** Give you reports on the conditions we find; and

**3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**1.** Are safe or healthful; or

**2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**H. Other Insurance**

**1.** If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**2.** Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

**3.** When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

**I. Premiums**

**1.** The first Named Insured shown in the Declarations:

   **a.** Is responsible for the payment of all premiums; and

   **b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   **a.** Paid to us prior to the anniversary date; and

Copyright, Insurance Services Office, Inc., 1997

**b.** Determined in accordance with Paragraph **2.** above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**J. Premium Audit**

**1.** This policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

**2.** Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**K. Transfer Of Rights Of Recovery Against Others To Us**

**1.** Applicable to Businessowners Property Coverage:

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at time of loss, that party is one of the following:

**(1)** Someone insured by this insurance;

**(2)** A business firm:

**(a)** Owned or controlled by you; or

**(b)** That owns or controls you; or

**(3)** Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

**2.** Applicable to Businessowners Liability Coverage:

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

**L. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

  Copyright, Insurance Services Office, Inc., 1997    □



**FARMERS**
**INSURANCE**

**AMENDING MEMBERSHIP OR POLICY FEE PROVISIONS**

**s7918**
WASHINGTON
**1st Edition**

Under Additional Conditions Form 56-5166, the sixth paragraph of Reciprocal Provisions and the Special Provisions Clause is deleted and replaced with the following:

Membership or policy fees which you pay are part of the premium but are earned when coverage is effective. They are not refundable except as noted in a. or b. below, but may be applied as a credit to membership fees required for other insurance accepted by us.

a. If we cancel this policy during or at the end of the first policy period, we will refund all membership or policy fees.

b. If you cancel this policy for any reason or if the policy is cancelled for non-payment of premium, during or at the end of the first policy period, the membership or policy fees will be refunded pro-rata.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

BUSINESSOWNERS
BP 04 73 12 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WASHINGTON CHANGES - DOMESTIC ABUSE

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions** in the Businessowners Standard and Special Property Coverage Forms:

1. We will not pay for loss or damage arising out of any act committed:

   **a.** By or at the direction of any insured; and

   **b.** With the intent to cause a loss.

2. However, this exclusion or any other policy provision (including the Concealment, Misrepresentation or Fraud Condition) will not apply to deny an insured's claim for an otherwise covered property loss if such loss is caused by an act of "domestic abuse" by another insured under the policy, and the insured making claim:

   **a.** Files a police report and cooperates with any law enforcement investigation relating to the act of "domestic abuse"; and

   **b.** Did not cooperate in or contribute to the creation of the loss.

3. If we pay a claim pursuant to Paragraph **A.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**B.** The following is added to the **Transfer Of Rights Of Recovery Against Others To Us** Common Policy Condition:

If we pay an insured, who is a victim of "domestic abuse", for a loss caused by an act of "domestic abuse", the rights of that insured to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That insured may not waive such rights to recover against the perpetrator of the "domestic abuse".

**C.** As used in this endorsement, "domestic abuse" means:

1. Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members;

2. Sexual assault of one family or household member by another;

3. Stalking, as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

4. Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

          Copyright, Insurance Services Office, Inc., 1998            ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



J**6740**

**1st Edition**

# TWO OR MORE COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

1. The following paragraph is added to the BUSINESSOWNERS COMMON POLICY CONDITIONS of the BP 00 09 and SECTION III - COMMON POLICY CONDITIONS of the BP 00 03 and supersedes any provision to the contrary:

   **A. Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued by us or any company affiliated with us provide coverage to anyone who qualifies as an insured under the policies and apply to the same accident, claim, damage, loss, "occurrence", offense, or "suit", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over the Coverage Form.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

93-6740 1ST EDITION 4-09
J6740-ED1

Includes Copyrighted Material of Insurance Services Office, Inc. with its permission.

J6740101 PAGE 1 OF 1

**W7935**
**Washington**
**2nd Edition**

This endorsement changes the policy. Please Read it carefully.

# MOLD AND MICROORGANISM EXCLUSION

This endorsement modifies insurance provided under the following

BUSINESSOWNERS COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
APARTMENT OWNERS LIABILITY COVERAGE FORM
CONDOMINIUM LIABILITY COVERAGE FORM
DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM

The following provisions apply to your policy.

**A**. Definition:

   **1.** "Mold" means any type or form of fungus including but not limited to mildew, mycotoxins, spores, scents or by-products produced or released by "mold".

   **2.** "Microorganism" means any organism (animal or plant) of microscopic size, including but not limited to any type or form of bacteria, bacterium, germ, intestinal flora, microbe, pathogen or virus or any part or by-product of any of the above.

**B**. This insurance does not apply to any:

   **1.** "Bodily injury" Property Damage" or "personal and advertising injury" which arising out of, resulting from, caused or contributed to, whether directly or indirectly by "mold" or "microorganism" and would not have occurred in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any "mold" or "microorganism";

   **2.** Any loss, cost or expense arising out the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effect of "mold" or "microorganism", by any insured or by any other person or entity;

   **3.** Any supervision, instruction, recommendation, warning or advice given or which should have been given in connection with 1 or 2 above; and

   **4.** Any obligation to share with or repay someone else who must pay damages because of such injury or damage.

However this exclusion does not apply to any "mold" or "microorganism" that are on, or are contained in, a good or product intended for consumption.


**FARMERS** INSURANCE

W**7912**
WASHINGTON
4th Edition

## WASHINGTON CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The following provisions are added to Businessowners Special Property Coverage Form **BP 00 02** or Section I - Property of Businessowners Coverage Form **BP 00 03**:

Paragraph **A.2. Property Not Covered** is amended as follows:

**1.** Paragraphs **A.2.a.** and **A.2.h.** are replaced by the following:

**a.** Aircraft, automobiles, or motortrucks; and any other vehicle if such vehicle is subject to licensing requirements;

**h.** "Computer(s)" which are permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to licensing requirements. This paragraph does not apply to "computer(s)" while held as "stock".

**2.** In section **B. Exclusions**, any introductory paragraph preceding an exclusion or list of exclusions is replaced by the following paragraph, which pertains to application of those exclusions:

We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

**a.** Directly and solely results in loss or damage; or

**b.** Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**3.** In Paragraph **B.1.b.**(2) of the Businessowners Special Property Coverage Form, or **B.1.b.**(5) of the Businessowners Coverage Form, the definition of Volcanic Action is replaced by the following:

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when loss or damage is caused by:

(a) Volcanic blast or airborne shock waves; or
(b) Ash, dust or particulate matter.

Volcanic Action does not provide coverage for damage to:

(a) Land;
(b) Property in the open or in open sheds; or
(c) Portions of buildings not completely enclosed, or personal property contained within those buildings.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Direct loss includes the cost to:

(a) Remove the ash, dust or particulate matter from the interior and exterior surfaces of the covered building; and
(b) Clean equipment and stock. If stock cannot be returned to its state before the volcanic eruption, the measure of loss will be the reduction in actual cash value.

Payment for removal applies only to the initial deposit of ash, dust or particulate matter following a volcanic eruption. Subsequent deposits arising from the movements of volcanic dust or ash by wind or other means are not covered.

The following applies to the Business Income and Extra Expense Additional Coverages only:

The "period of restoration" arising from the need for removal is the time necessary to remove the matter described with reasonable speed from the Covered Property.

Volcanic Action does not include loss caused by, resulting from, contributed to or aggravated by:

**(a)** Fire;

**(b)** Explosion;

**(c)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or other spray, all whether driven by wind or not; or

**(d)** Earth movement, including but not limited to earthquake, volcanic eruption, landslide, mine subsidence, lava flow, mudflow, earth sinking, earth rising or shifting.

**4.** Paragraph **B.2.k.** of the Businessowners Special Property Coverage Form, or **B.2.l.** of the Businessowners Coverage Form, is replaced by the following:

**Other Types Of Loss:**

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. This exclusion does not apply with respect to breakdown of "computers"; or

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **(1)** through **(7)** results in a "specified cause of loss", building glass breakage or collapse, as provided in the Additional Coverage, Collapse results, we will pay for the loss or damage caused by that "specified causes of loss", building glass breakage or collapse.

**5.** Paragraph **B.3. Exclusions** is replaced by the following:

**3.** We will not pay for loss or damage caused by or resulting from any of the following **a.** through **c.** But if an excluded cause of loss that is listed in **a.** through **c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a. Weather Conditions**

**(1)** A weather condition which results in:

**(a)** Landslide, mudslide or mudflow;

**(b)** Mine subsidence; earth sinking, rising or shifting (other than sinkhole collapse);

**(c)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

**(d)** Water backing up from a sewer or drain; or

**(e)** Water under the ground surface pressing on, or flowing or seeping through:

  **(i)** Foundations, walls, floors or paved surfaces;

  **(ii)** Basements, whether paved or not; or

  **(iii)** Doors, windows or other openings.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

(2) A weather condition which results in the failure of power or other utility service supplied to the described premises, if the failure originates away from the described premises. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**b. Acts Or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**c. Negligent Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

6. Paragraph **E. Property Loss Conditions** is amended as follows:

**a.** The last paragraph of Paragraph **2. Appraisal** does not apply.

**b.** Paragraph **3.(a)(1) Duties In The Event Of Loss Or Damage**, regarding notifying the police if a law may have been broken, does not apply.

**c. Loss Payment** Paragraphs **6.d.(1)(a)(ii)** and **6.d.(1)(a)(iii)** are replaced by the following:

(ii) The amount it would cost to replace the damaged item at the time of the loss with new property of similar kind and quality to be used for the same purpose on the same site; or

(iii) The amount you actually spend in repairing the damage, or replacing the damaged property with new property of similar kind and quality.

**d.** Paragraph **4. Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

If this action is brought pursuant to Sec. 3 of RCW 48.30 then 20 days prior to filing such an action, you are required to provide written notice of the basis for the cause of action to us and the Office of the Insurance Commissioner. Such notice may be sent by regular mail, registered mail, or certified mail with return receipt requested.

**e.** Subparagraph **6.d.(5) Loss Payment** is replaced by the following:

(5) Tenants' Improvements and Betterments at:

(a) Replacement cost if you make repairs within a reasonable time after loss;

(b) A proportion of your original cost if you do not make repairs within a reasonable time after loss. We will determine the proportionate value as follows:

(i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(ii) Divide the amount determined in (i) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(c) Nothing if others pay for repairs or replacement.

7. Paragraph **F.2. Mortgageholders** Property General Condition is replaced by the following:

Insurance Commissioner's Regulation No. 335/WAC284-21-010 requires that Form **372 (Ed. 11-50)** or Form **438 BFU (Ed. 5-42)** be endorsed on this policy to replace the **Mortgageholders** Property General Condition.

8. The following are added to the Businessowners Special Property Coverage Form, or Section I - Property of the Businessowners Coverage Form:

   **a.** The term actual cash value means:

   (1) When the damage to property is economically repairable, actual cash value means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

   (2) When the loss or damage to property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

   (3) Otherwise, actual cash value means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

   **b.** The word "vehicles", as used in the Businessowners Special Property Coverage Form, or Section I - Property of the Businessowners Coverage Form, means vehicles running on land or tracks, but not aircraft.

**B.** Businessowners Liability Coverage Form **BP 00 06** or Section II - Liability of Businessowners Coverage Form **BP 00 03** is amended as follows:

1. The following is added to Paragraph **A.1.a. Business Liability:**

   If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred

   The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

2. Paragraph **B.1.e. Employer's Liability** Exclusion applies only to "bodily injury" to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

   With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **B.1.e. Employer's Liability** is replaced by the following:

   **e. Employer's Liability**

   (1) "Bodily injury" to an "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business.

   (2) Any obligation to share damages with or repay someone else who must pay damages because of the injury.

   This exclusion does not apply to liability assumed by the insured under an "insured contract".

3. Paragraph **C.2.a.(1) Who Is An Insured** applies only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

   With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **C.2.a.(1)** is replaced by the following:

   (1) "Bodily injury" or "personal injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business; or

(b) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a).

**C.** Businessowners Common Policy Conditions **BP 00 09**, or Section III - Common Policy Conditions of the Businessowners Coverage Form **BP 00 03** is amended as follows:

1. Paragraph **A. Cancellation** is replaced by the following:

   **A. Cancellation**

   1. The first Named Insured shown in the Declarations may cancel this policy by notifying us or the insurance producer in one of the following ways:

      **a.** Written notice by mail, fax or e-mail;
      **b.** Surrender of the policy or binder; or
      **c.** Verbal notice.

      Upon receipt of such notice, we will cancel this policy or any binder issued as evidence of coverage, effective on the later of the following:

      **a.** The date on which notice is received or the policy or binder is surrendered; or
      **b.** The date of cancellation requested by the first Named Insured.

   2. We may cancel this policy by mailing or delivering to the first Named Insured and the first Named Insured's agent or broker written notice of cancellation at least:

      **a.** Five (5) days before the effective date of cancellation for any structure where two (2) or more of the following conditions exist:

         (1) Without reasonable explanation, the structure is unoccupied for more than 60 consecutive days, or at least 65% of the rental units are unoccupied for more than 120 consecutive days unless the structure is maintained for seasonal occupancy or is under construction or repair;

         (2) Without reasonable explanation, progress toward completion of permanent repairs to the structure has not occurred within 60 days after receipt of funds following satisfactory adjustment or adjudication of loss resulting from a fire;

         (3) Because of its physical condition, the structure is in danger of collapse;

         (4) Because of its physical condition, a vacation or demolition order has been issued for the structure, or it has been declared unsafe in accordance with applicable law;

         (5) Fixed and salvageable items have been removed from the structure, indicating an intent to vacate the structure;

         (6) Without reasonable explanation, heat, water, sewer, and electricity are not furnished for the structure for 60 consecutive days; or

         (7) The structure is not maintained in substantial compliance with fire, safety and building codes.

      **b.** Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium.

      **c.** 45 days before the effective date of cancellation if we cancel for any other reason.

   3. We will mail or deliver our notice stating the actual reason for cancellation to the first Named Insured and the first Named Insured's agent or broker at their last mailing addresses known to us.

   4. We will also mail or deliver to any mortgageholder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of cancellation prior to the effective date of cancellation. If cancellation is for reasons other than those contained in Paragraph **A.2.a.** above, this notice will be the same as that mailed or delivered to the first Named Insured. If cancellation is for a reason contained in paragraph **A.2.a.** above, we will mail or deliver this notice at least 20 days prior to the effective date of cancellation.

    5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be at least 90% of the pro rata refund. The cancellation will be effective even if we have not made or offered a refund.

    7. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. Paragraph **H.1. Other Insurance** is replaced by the following:

    1. With respect to property insurance provided this Coverage Form:

        **a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this policy bears to the limits of insurance of all insurance covering on the same basis.

        **b.** If there is other insurance covering the same loss or damage, other than that described in **a.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

3. Paragraph **I.3. Premiums** is replaced by the following:

    **3.** The premium must be:

        **a.** Paid to us prior to the anniversary date; and

        **b.** Determined in accordance with Paragraph   **2.** above.

    Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. The following paragraph is added:

    **M. Nonrenewal**

        **a.** We may elect not to renew this policy by mailing or delivering written notice of nonrenewal, stating the reasons for non-renewal, to the first Named Insured and the first named Insured's agent or broker, at their last mailing addresses known to us. We will also mail to any mortgageholder, pledgee or other person shown in this policy to have an interest in any loss which may occur under this policy, at their last mailing address known to us, written notice of nonrenewal. We will mail or deliver these notices at least 45 days before the:

        (1) Expiration of the policy; or

        (2) Anniversary date of this policy if this policy has been written for a term of more than one year.

    If notice is mailed, proof of mailing will be sufficient proof of notice.

    Otherwise, we will renew this policy unless:

        (1) The first Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of the renewal premium, to the first Named Insured and the first Named Insured's insurance agent or broker, at least 20 days before the expiration date;

        (2) Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

        (3) The policy clearly states that it is not renewable, and is for a specific line, sub-classification, or type of coverage that is not offered on a renewable basis.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

**W2274**
**1st Edition**

### WASHINGTON EXCLUSION - ASBESTOS, SILICA
### OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the:

**BUSINESSOWNERS COVERAGE FORM**
**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to Section **B. Exclusions** of the **Businessowners Liability Coverage Form** or of **Section II - Liability** of the **Businessowners Coverage Form**:

   **1. Applicable To Business Liability Coverage**

     This insurance does not apply to:

     **Asbestos, Silica Or Silica-Related Dust**

     **(1)** "Bodily injury", or "personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, exposure to, existence of, or presence of, asbestos, "silica" or "silica-related dust";

     **(2)** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, asbestos, "silica" or "silica-related dust";

     **(3)** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, asbestos, "silica" or "silica-related dust", by any insured or by any other person or entity;

     **(4)** Any loss, cost or expense arising, in whole or in part, out of any supervision, instructions, recommendations, warnings or advice given, or which should have been given, in connection with asbestos, "silica" or "silica-related dust"; or

     **(5)** Any loss, cost or expense arising, in whole or in part, out of any obligation to share damages with or repay someone else who must pay damages in connection with asbestos, "silica" or "silica-related dust".

**B.** For the purposes of this endorsement, **Section F. - Liability And Medical Expenses Definitions** is amended as follows:

   **1.** The following definitions are added:

     **a.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

     **b.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

   **2.** The following definitions are amended:

     **a.** "Bodily injury" is amended to include mental injury, anguish, distress or fear of cancer or other injury, illness or disease caused by or related to asbestos, "silica" or "silica-related dust", or exposure to asbestos, "silica" or "silica-related dust".

     **b.** "Property damage" is amended to include actual or threatened loss of property value, loss of equity, loss of use, loss of rents or other economic injury caused by asbestos, "silica" or "silica-related dust" or exposure to asbestos, "silica" or "silica-related dust".



Dear Valued Customer,

Have the growth of your business and rising labor costs reduced the accuracy of the payroll or revenue shown on your policy? Have increased costs and inflationary trends reduced the protection provided by your policy? Building and Business Personal Property insurance limits, once adequate, may no longer meet today's repair or replacement costs.

To help compensate for these inflationary trends, the limits of insurance for Building and/or Business Personal Property coverages have been increased by a modest percentage. To keep your policy current with rising labor costs and normal business growth, the payroll and/or revenue have also been increased by a modest percentage.

This renewal offer includes the adjusted limits of insurance, payroll, revenue, and premium for your policy. The adjustments are relatively small, and they're based on estimated increases in the past year's construction and repair costs, as well as other inflationary factors, such as rising labor costs and normal business growth.

These increases do not guarantee adequate coverage for any loss; they are based on estimates. It is possible, for example, that updates or improvements to your property or increased sales might cause your individual needs for coverage to be greater than the amount provided by these adjustments. If you have not reviewed your policy recently, the effects of inflationary changes over time create the likelihood that the increases we made are less than the increases you need for optimal coverage.

These changes are made to better serve your insurance needs, and we encourage you to contact your Farmers® agent, who will be pleased to help you with a comprehensive review of your policy.

Acceptance of these changes does not waive the provisions of the coinsurance clause or any other policy clause.

Thank you for choosing Farmers. We appreciate your business.

**INTERLINE**
**IL 00 03 04 98**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    BUSINESSOWNERS POLICY
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 **FARMERS** INSURANCE

J**6345**
**1st Edition**

## EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

The following exclusion is added to Paragraph **B. Exclusions - Applicable To Business - Liability Coverage.**

**B. Exclusions**

This insurance does not apply to:

DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS** INSURANCE

E**2042**
**2nd Edition**

## MULTIPLE OR ENHANCED DAMAGES
## EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS LIABILITY COVERAGE FORM

The following exclusions are added to Section **B. Exclusions:**

1. **Applicable to Business Liability Coverage**

   This insurance does not apply to:

   **r. Multiple Or Enhanced Damages Because of "Bodily Injury", "Property Damage", or "Personal and Advertising Injury."**

   The enhanced or multiple amount of damages awarded against any insured including, but not limited to, double or treble damages, whether or not awarded as compensation, because of "bodily injury", "property damages" or "personal and advertising injury".

   **s. Taxes, Fines or Penalties**

   Taxes, fines or penalties that are awarded or imposed against any insured.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

Copyright, Insurance Services Office, Inc., with its permission.

**Policy Number:** 60484-23-20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



**FARMERS**
**INSURANCE**

**j6351**
**2nd Edition**

### LIMITED TERRORISM EXCLUSION
### (OTHER THAN CERTIFIED ACTS OF TERRORISM);
### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the policy number indicated above.

### SCHEDULE

| |
|---|
| The **Exception Covering Certain Fire Losses** (Paragraph **B.2.**) applies to property located in the following state(s): |
| California, Hawaii, Iowa, Illinois, Massachusetts, Maine, Missouri, North Carolina, New Jersey, New York, Oregon, Rhode Island, Virginia, Washington, Wisconsin, West Virginia |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** The following definitions are added with respect to the provisions of this endorsement:

  **1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

  **2.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less.

**B.** The **Property Coverage Form** attached to this policy is amended as follows:

  **1.** The following exclusion is added:

  **EXCLUSION OF AN "OTHER ACT OF TERRORISM"**

  We will not pay for loss or damage caused directly or indirectly by an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

    **a.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

    **b.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

   **c.** The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

   With respect to this item, **B.1.c.** the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an "other act of terrorism", there is no coverage under this Policy.

**2. Exception Covering Certain Fire Losses**

   The following exception to the Exclusion in Paragraph **B.1.** applies only if indicated and as indicated in the Schedule of this endorsement.

   If an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under business income and/or extra expense coverage or endorsements that apply to those coverages.

**C.** The **Liability Coverage Form** attached to this policy is amended as follows:

   **1.** The following exclusion is added:

   This insurance does not apply to:

   **TERRORISM**

   "Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

   **a.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

   **b.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **(1)** Physical injury that involves a substantial risk of death; or
   **(2)** Protracted and obvious physical disfigurement; or
   **(3)** Protracted loss of or impairment of the function of a bodily member or organ; or

   **c.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

   **d.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

   **e.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   With respect to this exclusion, Paragraphs **C.1.a.** and **b.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**2.** The following definition is added:

    **a.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Form.

## D. APPLICATION OF OTHER EXCLUSIONS

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for loss or injury or damage that is otherwise excluded under this Policy.

## E. CAP ON CERTIFIED TERRORISM LOSSES

The following limitation applies to property and liability coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of Paragraph **D.**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.



## ADDITIONAL CONDITIONS

Applicable only if this policy is issued by the Truck Insurance Exchange or Farmers Insurance Exchange

### RECIPROCAL PROVISIONS

As used in these provisions the term "Underwriters Association" means the Truck Underwriters Association or the Farmers Underwriters Association respectively, attorney-in-fact for the Insurance Exchange issuing the policy.

This policy is made and issued in consideration of your premium payment to us. It is also issued in consideration of the information you gave to us during the application process, some of which is set out in the policy Declarations, and in consideration of the Subscription Agreement, which is provided to you and is incorporated herein by reference. You acknowledge that you have read, understood and agree to all the terms and conditions of the Subscription Agreement. Among other things, the Subscription Agreement appoints your Attorney-in-Fact, authorizes your Attorney-in-Fact to execute interinsurance policies between you and other subscribers and to perform various functions, and addresses compensation of the Attorney-in-Fact.

Nothing in this policy is intended, or shall be construed, to create either:
a. A partnership or mutual insurance association, or
b. Any joint liability.

We may sue or be sued in our own name, as though we were an individual, if necessary to enforce any claims which arise under this policy. In any suit against us, service of process shall be under the Underwriters Association attorney-in-fact. Membership fees which you pay are not part of the premium. They are fully earned when you are granted membership and coverage is effective. They are not returnable. However, they may be applied as a credit to membership fees required you for other insurance which we agree to write.

We hold the Annual Meeting of the members of the Truck Insurance Exchange at our Home Office at Los Angeles, California, on the first Tuesday following the first Monday following the 15th day of March of each year at 1:00 p.m. If this policy is issued by the Farmers Insurance Exchange such meeting is held at the same place on the first Monday following the 15th of March of each year at 2:00 P.M. The Board of Governors may elect to change the time and place of the meeting. If they do so, you will be mailed a written or printed notice at your last known address at least ten days before such a time. Otherwise, no notice will be sent to you.

The Board of Governors shall be chosen by subscribers from among yourselves. This will take place at the Annual Meeting or at any special meeting which is held for that purpose. The Board of Governors shall have full power and authority to establish such rules and regulations for our management as are not inconsistent with the subscribers' agreements.

Your premium for this policy and all payment made for its continuance shall be payable to us at our Home Office or such location named by us in your premium notice. The funds which you pay shall be placed to your credit on our records. They will be applied to the payment of your proportion of losses and expenses and to the establishment of reserves and general surplus. The Board of Governors or its Executive Committee has the authority to deposit, withdraw, invest and reinvest such funds. You agree that any amount which the Board of Governors allocates to our surplus fund may be retained by us. Also, after provision is made for all of our liabilities, it may be applied to any purpose deemed proper and advantageous to you and other policyholders.

This policy is nonassessable.

### SPECIAL PROVISIONS

(Applicable only if this policy is issued by Mid-Century Insurance Company.)

Policy fees which you pay are not part of the premium. They are fully earned when the policy is issued. They are not returnable. However, they may be applied as a credit to policy fees required of you for other insurance which we agree to write.

This policy shall not be effective unless countersigned on the Declarations page by a duly authorized representative of the Company named on the Declarations Page.

The Company named on the Declarations has caused this policy to be signed by the officers shown below.

**FARMERS INSURANCE EXCHANGE**          **MID-CENTURY INSURANCE COMPANY**          **TRUCK INSURANCE EXCHANGE**

By Farmers Underwriters Association,                                                    By Truck Underwriters Association,
Attorney-in-Fact                                                                       Attorney-in-Fact

 

 

                 Secretary                                                                    President

# EXHIBIT B

FILED
SKAGIT COUNTY CLERK
SKAGIT COUNTY, WA

2018 MAR 22 AM II: 58

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SKAGIT

MANUEL IBARRA,

        Plaintiff,

vs.

GREENFAB, LLC, a legal entity; GREENFAB
HOMES, LLC, a legal entity; and CHINOOK
LUMBER, INC., a Washington Corporation.

        Defendants

NO. 18-2-00398 29

**COMPLAINT FOR PERSONAL
INJURIES AND DAMAGES**

Plaintiff alleges on information and belief:

## I.    PARTIES, JURISDICTION AND VENUE

1.1    At all relevant times, plaintiff Manuel Ibarra has resided in the State of Washington.

1.2    Defendant Greenfab, LLC is a corporation which transacted business in Skagit County, Washington both at the time this action arose and at the time it was commenced.

1.3    Defendant Greenfab Homes, LLC is a corporation which transacted business in Skagit County both at the time this action arose and at the time it was commenced.

COMPLAINT FOR PERSONAL INJURIES AND
DAMAGES - 1

LAW OFFICES OF
TARA L. EUBANKS, PLLC
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com

1.4     Defendant Chinook Lumber, Inc. is a corporation which transacted business in Skagit County, Washington both at the time this action arose and at the time it was commenced.

## II.     FACTS

2.1     On May 5, 2016, plaintiff Manuel Ibarra was severely injured when a scaffolding holding lumber collapsed on top of him at the Job Site 555 E. George Hopper Road, Burlington, WA 98233.

2.2     At the time he was injured, plaintiff was working in the course and scope of his employment for a subcontractor that defendants Greenfab, LLC and Greenfab Homes, LLC hired to build prefabricated wood structures at the Job Site.

2.4     In May 2016, defendants Greenfab, LLC and Greenfab Homes, LLC was in control of the Job Site where plaintiff was injured.

2.5     Greenfab Homes, LLC as a general contractor at the Job Site, had a non-delegable duty to maintain the Job Site and everything used on the Job Site, including all scaffolding in a reasonably safe condition for employees on the Job Site.

2.5     Upon information and belief, defendant Greenfab Homes, LLC, by and through its employee Tony Morris, supplied the scaffolding, ladder, and other equipment to the site.

2.6     Tony Morris was not a competent person qualified in scaffold erection, moving, dismantling or alteration.

2.7     Defendant Greenfab Home, LLC's employee, Tony Morris, erected the scaffolding.

2.8     Defendant Greenfab Homes, LLC, by and through its employee, knew that the scaffolding had only one crossbar support.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES - 2**

**LAW OFFICES OF**
**TARA L. EUBANKS, PLLC**
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com

2.9     The scaffolding was not inspected for visible defects by a competent person before the work shift on May 5, 2016.

2.10    Defendant Greenfab Homes, LLC, by and through its employee Tony Morris, had control over the scaffolding on May 5, 2016.

2.11    Defendant Greenfab Homes, LLC knew that the scaffolding would not hold 2,000 pounds of lumber.

2.12    Defendant Greenfab Homes, LLC, by and through its employee, Tony Morris, instructed plaintiff and others to use the scaffolding to transport the lumber into the warehouse.

2.13    Defendants Greenfab, LLC and Greenfab Homes, LLC knew that a person could be severely injured or killed if the scaffolding collapsed on top of him or her.

2.14    The scaffolding collapsed because defendants Greenfab, LLC and Greenfab Homes, LLC failed to exercise ordinary care in the construction and/or maintenance of it.

2.15    On May 5, 2016 Defendant Chinook Lumber, Inc. delivered lumber to the Job Site at 555 E. George Hopper Road, Burlington, WA 98233.

2.16    Defendant Chinook Lumber delivered two bundle packages of lumber weighing approximately 2,237 pounds.

2.17    Defendant Chinook Lumber was in control of a Moffet Truck mounted forklift to unload the lumber from its truck on to the scaffolding platform.

2.18    Defendant Chinook Lumber, Inc. placed over 2,000 pounds of lumber on top of the scaffolding platform.

2.19    Defendant Chinook Lumber knew that the total weight of lumber was more than 2,000 pounds when it unloaded it.

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES - 3**

LAW OFFICES OF
TARA L. EUBANKS, PLLC
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com

2.20     Defendant Chinook Lumber knew that the scaffolding could not support the size and weight of the lumber.

2.21     Defendant Chinook Lumber knew that if the scaffolding collapsed on top of an individual it could severely injure or kill him or her.

2.22     Plaintiff's injuries were caused by the unsafe offloading of the lumber and the unsafe condition and improper build of the scaffolding.

### III.     LIABILITY AND PROXIMATE CAUSE

#### *Defendants Greenfab, LLC and Greenfab Homes, LLC*

3.1     Plaintiff Manuel Ibarra was injured as a direct and proximate result of the tortious conduct, fault, negligence and carelessness of defendants Greenfab, LLC and Greenfab Homes, LLC in that they supplied the unsafe scaffolding, ladder and other equipment; they failed to provide a competent person qualified in scaffold erection, moving, dismantling or alteration; they failed to test, inspect for visible defects and ensure that the scaffolding and other equipment were in a safe condition before it supplied them; they failed to remedy the hazards in the scaffolding before exposing plaintiff to them; they knew or should have known that the scaffolding was unsafe or was likely to be unsafe for the use for which it was supplied; they had no reason to believe that the plaintiff would realize its unsafe condition; they failed to exercise reasonable care to inform plaintiff of its unsafe condition or of the facts which make it likely to be unsafe; they failed to ensure that work practices, processes and methods that are reasonably adequate to make the workplace safe were used on the Job Site in violation of WAC 296-800-11010; they failed to maintain a safe Job Site in violation of RCW 49.17.060 and WAC 296.155.040, and it may have

COMPLAINT FOR PERSONAL INJURIES AND
DAMAGES - 4

LAW OFFICES OF
TARA L. EUBANKS, PLLC
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com

engaged in other negligent or careless conduct, which will be set forth during discovery and at trial.

### *Defendant Chinook Lumber, Inc.*

3.2     Plaintiff Manuel Ibarra was injured as a direct and proximate result of the tortious conduct, fault, negligence and carelessness of defendant Chinook Lumber, Inc. in that it failed to evaluate how its operations exposed plaintiff and others in the workplace to the dangerous conditions; it failed to inspect the scaffolding before unloading the lumber on it; it failed to ensure proper load limits and positioning before unloading the lumber on the scaffolding; it failed to properly train its employees in unloading lumber; and it may have engaged in other negligent or careless conduct, which will be set forth during discovery and trial.

### IV.     INJURIES AND DAMAGES

4.1     As a direct and proximate result of each defendant's negligence and tortious conduct, plaintiff suffered serious bodily injuries and physical and mental pain and suffering, including collapsed lung, multiple broken ribs, internal bleeding, liver lacerations, and fractured lumbar vertebrae. The full nature and extent of the injuries are yet unknown to plaintiff, but they are believed to be permanent. Plaintiff has suffered and will continue to suffer physical pain, disability, impairment, loss of enjoyment of life, disfigurement, and emotional damage because of the incident.

4.2     As a further direct and proximate result of each defendant's negligence and tortious conduct, plaintiff has incurred reasonable and necessary hospital and medical expenses, has been impaired in performing household tasks, and has had his usual and customary recreational activities limited or curtailed.   Reasonable and necessary medical expenses, costs of continuing care and assistance, and other expenses will be

**COMPLAINT FOR PERSONAL INJURIES AND
DAMAGES - 5**

LAW OFFICES OF
TARA L. EUBANKS, PLLC
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com

incurred in the future in an amount not presently known, which will be set forth at or before the time of trial.

4.3     As a further and direct and proximate result of each defendant's negligence and tortious conduct, plaintiff has sustained economic loss and loss of earning capacity.  The amount of plaintiff's loss of earnings and loss of earning capacity is not presently known, but will be set forth at or before the time of trial.

WHEREFORE, plaintiff prays for judgement against defendants Greenfab, LLC; Greenfab Homes, LLC; and Chinook Lumber, Inc. individually and jointly and severally in such sum or sums as shall be determined at trial plus such other relief as the court shall deem just and proper.

Dated this 19th Day of March, 2018.

WAYERSKI ZMOLEK, LLP

KIP WAYERSKI, WSBA #22964

LAW OFFICES OF TARA L. EUBANKS, PLLC

TARA L. EUBANKS, WSBA #34008

Attorneys for Manuel Ibarra

COMPLAINT FOR PERSONAL INJURIES AND
DAMAGES - 6

LAW OFFICES OF
TARA L. EUBANKS, PLLC
100 Second Ave. S., Suite 210
Edmonds, WA 98020
P: 425-599-1644, F: 425-979-5815
Email: tara@taraeubankslaw.com